COMMONWEALTH v. THOS. McMAHON.

APPEAL BY DEFENDANT FROM THE COURT OF OYER AND TER-
MINER OF VENANGO COUNTY.

Argued October 8, 1891—Decided November 9, 1891.

1. On the trial of an indictment for a criminal offence, the flight of the person charged, immediately after the time of the commission of the offence, is a circumstance which may always be submitted for the consideration of the jury.
2. The defence of alibi being set up, in such case, it was not error to instruct the jury that if it "was false, and manufactured by the defence, it should go for nothing, and should have some weight against the defendant."
3. A point presented by the defendant, upon the question of identity, to the effect that it would be dangerous to convict upon certain facts recited, but not embracing the full evidence, may without error be refused, or submitted to the jury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 281 October Term 1891, Sup. Ct.; court below, No. —— August Term 1891, Q. S.

On August 24, 1891, the grand jury returned as a true bill an indictment charging Thomas McMahon, Michael McMahon

and Charles Miller, in one count with burglary, and in another, with aggravated assault and battery, on the information of J. L. Anderson. The indictment being certified into the Court of Oyer and Terminer, the prisoner Thomas McMahon was duly arraigned, and pleaded not guilty. Issue.

At the trial on August 27, 1891, the case presented was to the effect that, on the morning of November 21, 1890, between 1 and 2.30 A. M., three masked men entered the house of the prosecutor in Oil City, occupied by himself, his wife, and a niece, Miss Turk. Mr. and Mrs. Anderson occupied a bedroom on the second floor, connected with the room occupied by Miss Turk. Mrs. Anderson, being aroused by a noise made below, went down stairs without a light, when she was seized by one of the burglars. The other two entered the room occupied by Mr. Anderson, where the latter was attacked and beaten to insensibility. They then entered the room occupied by Miss Turk, who had also been aroused, had raised the window, and was screaming for help. She was seized, tied upon the bed, and the window blinds pulled down. Mrs. Anderson was then brought up from below and tied on the bed with her. The burglars ransacked the house, conversed with each other, obtained some plunder, and left. Afterwards, Mr. Anderson revived, and released Mrs. Anderson and Miss Turk.

The defendant was personally well known to the inmates of the Anderson house, as he had lived but a short distance from them on the opposite side of the street. He was identified at the time of the burglary by his voice, flashes of light upon him from a dark lantern carried by one of the men, and in the moonlight, in Miss Turk's room, before the blinds were pulled down. An alibi, however, was set up as a defence. The defendant testified, in substance, and adduced corroborative testimony, that, in company with Charles Miller, he was in Oil City until about 10 o'clock on the evening of November 20th, when he boarded a freight train and rode in a box car to Corry, Pa., where he was, forty-nine miles from Oil City, at the hour of the burglary; that he was seen at Corry at the time referred to; that thence he went to Brocton, New York, on the same train, reaching Brocton between 6 and 7 in the morning. The theory of the commonwealth, however, with some evidence tending to support it, was that after the defendant boarded the

freight train, he jumped off and returned, staid awhile at a Mrs. Brown's, until 11 o'clock as testified to by a witness named McComb, and left, afterward taking part in the burglary; that, after the burglary was committed, the parties got upon an express train passing through the city at 3 o'clock, and changed subsequently from the express to the freight train at Prospect, before reaching Brocton. There was also evidence that the defendant was not about Oil City for some time prior to November 20th, and that when he arrived at Brocton he went to Buffalo, thence to Chicago, and thence to Indianapolis, staying out of Pennsylvania until June following, when he was arrested on his return.

At the close of the testimony, the court, TAYLOR, P. J., charged the jury in part as follows :

The commonwealth asks you to find from the evidence that the two men, Miller and this defendant, were together up there in the neighborhood of where the offence was committed; that the two men were together when they left there, and that they were together at Mrs. Brown's, and staid there all night at Mrs. Brown's one night; and that on this night that they went from there back; instead of leaving the country, that they jumped on a freight train and went a little ways, and jumped off again and came back to this house.

They ask you to find that these parties could not be mistaken as to the identity of the prisoner, from the fact of his appearance, their knowing him as well as they did, Mr. Anderson and Mrs. Anderson and the girl, Miss Turk, and the size of the men and the manner of their dress, and their voices,—one of them says she heard them speak,—and from that they ask you to find this.

[Then, the alleged flight of the prisoner; his leaving this country on the morning after this; according to his own statement, on the morning after this occurred, or that evening, and his staying away until the next June, when he was arrested. They ask you to find that the testimony of McComb is true, and if the testimony of McComb is true, that this defence is a manufactured one, of an alibi, and that that ought to make against the prisoner.] [1]

Now, as to this defence of an alibi. An alibi is that a man

Charge of Court below.

was not at the place where an offence was committed, at the time it is proven to have been done. The defendant asks you to find from the evidence that at that time, to wit, between one and two o'clock, he was on a freight train at or near Corry, some forty miles from the scene of the burglary. If that was true he ought not to be convicted. In this defence of an alibi, the burden of proof is upon the defendant. He must satisfy you from the weight of the evidence, which you deem credible, that his theory is the correct one, and that that defence is true. To be successful, it must cover the whole period of time within' which the offence might reasonably have been committed, and the witnesses by whom it is sought to be established must, in your opinion, be credible. So, if you so find, the prisoner should be acquitted. [But, upon the other hand, if you should find that this defence of an alibi, as claimed by the common-wealth, was false, and manufactured by the defence, it should go for nothing, and should have some weight against the defendant.] [2] . . . . .

The defendant asks us to instruct you:

4. It is a recognized rule of law, that, so far as personal identity is concerned, it is possible for witnesses to be easily misled and mistaken; therefore, in considering the evidence of the witnesses on the part of the commonwealth, it is the duty of the jury to scan with great care and caution their opportunities for observation and identification; and if they were made in the dark, with only an occasional gleam from a dark lantern, under circumstances of fear, pain or suffering, and where the witness could only judge of the person from the size, and eyes, and a small part of the lower forehead, such state of facts would present a case where, giving the defendant the benefit of a reasonable doubt, it would or might be extremely dangerous to convict.

Answer: The jury must be satisfied beyond a reasonable doubt of the prisoner's presence, as before indicated. The evidence of identification, or want thereof, is for the jury.[3]

8. Where the commonwealth could produce witnesses who would ordinarily be the ones in a situation where they would likely best know a material fact to be true or not true, or, in other words, if the jury are satisfied that the train crew, the ticket agent, or other employees or any of the crew of the night

Opinion of the Court.

express, would most likely know whether or not McMahon rode on the said night express to Brocton, November 20, 1890, and that the commonwealth fails to call any such witnesses on that point, then the presumption of law would arise that such witnesses, if called, would not testify against the interests of the defendant.

Answer: If McMahon could not have surreptitiously ridden upon this train, or by connivance of some of its crew, in the opinion of the jury; with this addition, this point is affirmed.[4]

—The jury returned a verdict that the defendant was guilty. A rule for a new trial having been discharged and sentence passed, the defendant took this appeal, assigning for error:

1, 2. The portions of the charge embraced in [ ][1][2]

3, 4. The answers to the defendant's points.[3][4]

*Mr. Wm. J. Breene,* for the appellant.

Counsel cited: (1, 2) Turner v. Commonwealth, 86 Pa. 54; Rudy v. Commonwealth, 128 Pa. 500.    (3, 4) Olmsted v. Gere, 100 Pa. 127.

*Mr. F. L. Kahle,* Distict Attorney, (with him *Mr. Isaac Ash,*) for the Commonwealth.

As to the defence of alibi, counsel cited: Pilger v. Commonwealth, 112 Pa. 220; Webster's Case, 5 Cush. 124 (Bemis's ed., 429) ; People v. Larned, 7 N. Y. 448; Porter v. State, 55 Ala. 95; Whart. Cr. Ev., 333, 334; Watson v. Commonwealth, 95 Pa. 422.

PER CURIAM:

We find no error in the first and second specifications. The flight of a person charged with crime immediately after the commission of an offence, is a circumstance which the jury may always take into consideration ; and if the defence of an alibi is false, or, in the language of the court below, "manufactured, it should go for nothing, and have some weight against the defendant."

The answer of the learned judge to the defendant's fourth point is not as direct as it might have been. It might well have been refused, however, for the reason that it was not based upon the full evidence. It related to the question of

identification, and assumed that the only opportunities for such identification occurred in a dark night, with only an occasional gleam of a dark lantern ; whereas there was testimony that, before the curtains were pulled down, the moon shone in the room, and the witness could see without trouble. Besides, some of the witnesses had known the defendant for years, and they heard his voice.

The fourth specification is not sustained. It appeared by the evidence of the appellant himself that he had stolen a ride upon the night express, which circumstance fully justified the answer of the court to the defendant's eighth point. We find no error in this record.

Judgment affirmed.