## Commonwealth *v.* Fasci, Appellant.

*Criminal law—Murder—Confederates—Evidence.*

1. Where three men are indicted for the commission of the same murder, and two have been convicted, the Commonwealth may, at the trial of the third, after showing that he was one of the participants in the crime, introduce evidence that he had been in association with the other two prior to the crime.

*Criminal law—Murder—Fleeing jurisdiction—Charge of court.*

2. A trial judge, dealing with an atrocious crime, has the right, and it is his duty, to comment upon the testimony in such a way as to point out to the jury its strength and weaknesses.

3. In this case the court's comments upon the evidence were held sufficient and proper.

4. Where there is proof that a defendant in a murder trial was present at the commission of the crime, it is proper to admit evidence that, following the deed, he fled the jurisdiction and was apprehended months later in another state.

Argued May 12, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 212, Jan. T., 1926, by defendant, from judgment of O. & T. Lackawanna Co., May T., 1925, No. 2, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Paul Fasci, alias Peter Felihie. Affirmed.

Indictment for murder.  Before MAXEY, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which sentence of death was passed.  Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Wm. B. Landis,* with him *John J. Owens,* for appellant.

*Harold A. Scragg,* District Attorney, with him *Joseph B. Jenkins,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 26, 1926:

Appellant was found guilty of murder of the first degree and the jury which tried him fixed the penalty of his crime as death.  He was one of the Laurel Line bandits who held up a car on that electric railway and robbed the paymaster of the West End Coal Company, who was a passenger thereon, of a sum in excess of $70,-000.  In the course of the robbery, Edward Murphy, also a passenger in the car, was slain by the bandits. To pass upon the questions raised by defendant, it is not necessary to recite further the details of the crime; they will be found more at length in the opinion sustaining the conviction of two of his confederates: Com. v. Torti et al., 283 Pa. 43.

Four witnesses who were on the car positively identified appellant as one of those participating in the robbery and murder.

It is complained to us that the Commonwealth was permitted to introduce evidence of prior association of appellant with Torti and Burchanti, who were convicted of the murder.  It was shown that these three and others who participated in the crime were seen together prior thereto in the town of Mocanaqua, where they were employed by the West End Coal Company, the theory of

the Commonwealth being that they had there entered into the conspiracy to rob its paymaster, which they consummated. The testimony of prior association was introduced by the prosecution after evidence had been given identifying defendant as one of the participants in the crime. It was entirely proper for the Commonwealth to offer such proof after testimony showing defendant's presence at the crime, to establish that he was an associate of the other men who had been convicted and condemned therefor. Because the defendant was tried alone did not prevent the prosecution from showing, as a basis for the conclusion that he had confederated with those who had been found guilty of the murder, that he was in association with them prior to the crime. This is not testimony (such as was held improper in Cheny v. State, 7 Ohio 222; People v. Pettanzo, 101 N. E. 428, or People v. McGraw, 72 N. Y. S. 679) merely that the accused had associated with criminals, but evidence showing a background of the actual crime in which witnesses saw him participate and in which it had been proved his previous associates took part. If there had been no proof of his actual connection with the crime and the only evidence proffered against him had been that of previous association with those who were guilty of it, then it would have been erroneous to have permitted such testimony, but, since it was shown that he had taken part in the crime with others actually convicted thereof, the door was wide open to the Commonwealth to show his previous connection with them, on the same principle that made the evidence admissible in Hester v. Com., 85 Pa. 139; McManus v. Com., 91 Pa. 57; Carroll v. Com., 84 Pa. 107; Campbell v. Com., 84 Pa. 187; Com. v. Fragassa, 278 Pa. 1; Com. v. Daniele, 278 Pa. 7.

It is argued that the trial judge erroneously excluded the testimony of two of appellant's witnesses. It was proposed to show they had identified another man in Ohio as the one who actually committed an act occurring in the commission of the crime,—carrying out of the

car the containers holding the stolen money,—which had been attributed to the defendant. Appellant's counsel in their printed brief say it may be urged upon us by the Commonwealth, as it is, that this evidence was in reality admitted, but that it was not admitted as offered. Our reading of the record satisfies us that all was elicited from the witnesses which they could tell about their identification of the other man. Furthermore, one of them, Nemethy, testified he did not identify the man in Ohio as the one who carried out the containers, and the other witness, Grambs, said in substance that he did not identify another man there and that the defendant resembled "very much" the man who carried out the money containers.

It is contended that the charge of the court was unfair to defendant in that it gave to the jury the impression that he was guilty and that the evidence offered in his behalf should not be given as great weight as that of the Commonwealth. Our careful reading of the charge with this criticism in mind does not lead us to the conclusion argued for. The trial judge was dealing with a most atrocious crime and it was his right, indeed his duty, to comment upon the testimony in such a way as to point out to the jury its strength and its weakness. The fundamental evidence on the Commonwealth's side was that of the witnesses who positively identified the defendant. They were in position to identify him. One of them, Welby, was in the car within a few feet of the defendant when the latter placed a revolver against another passenger in the car. Arthur W. Smith was directly alongside the defendant, who placed a revolver at his breast and searched him. A third, Mulderig, testified that the appellant was directly against him and held a revolver to his breast, telling him to hold up his hands, and Joseph Smith said he had a full view of the defendant's face. The defendant was not masked. In connection with the charge, plaintiff claims that nothing adequate was said about the methods employed by the state

police in securing the identification of appellant. Following the commission of the crime, he fled the jurisdiction and was apprehended eighteen months later in another state after a long hunt for him. This in itself was evidence of guilt: Com. v. McMahon, 145 Pa. 413; Com. v. DeFelippis, 245 Pa. 612; Com. v. Bezek, 168 Pa. 603, 25 A. L. R. 886. Appellant did not take the stand in his own defense and there is not a word of testimony in the case to show he was not present at the crime. It is true he was held by the state police in their barracks after his arrest for about three weeks while they were getting the persons who had been on the car to come and look at him in order to ascertain whether he would be recognized as one of the bandits. There is nothing in the testimony indicating that there was any improper treatment of him while he was held in the barracks and it is not apparent why the court should have more particularly commented upon the circumstance of his being there detained than it did. The point of the defendant asking instructions that the jury should carefully consider all the evidence concerning the identification, the methods employed by the state police at the barracks and in obtaining the identification, was affirmed by the trial judge. The court's comments upon the testimony of certain of the witnesses who could not identify the defendant were entirely proper. Admittedly there were seven bandits engaged in the crime. Certain of the witnesses saw only four of them, and others could not, from excitement and fear caused by seeing one of their fellow passengers shot down in cold blood, recall the faces of all of the criminals.

We have examined each of the assignments of error with care and read the entire record in the case. The testimony satisfies us, as it did the jurors, that the defendant was a participant in the heinous crime with which he was charged and of which he was convicted. Nothing brought to our attention by his zealous counsel stands in the way of his paying the penalty which the jury found was his due.

The assignments of error are all overruled, the judgment is affirmed and the record is remitted to the court below for the purposes of execution.