Com. of Pa. *v.* Trunk, Rinalducci and Cassidy, Appellants.

570

Argued May 4, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cun-

NINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Theodore Lane Bean,* and with him *Edward F. Kane,* for appellants.

*Herman J. Goldberg,* Special Attorney, and with him *Dennis A. O'Neill,* for appellee.

OPINION BY BALDRIGE J., July 14, 1932:

These twelve appeals are founded on eight bills of indictment, charging the appellants with aggravated assault and battery, conspiracy and false imprisonment. The defendants were found guilty and sentences were imposed on bills Nos. 164-7, 164-8, 164-9 (appeals Nos. 132, 135 and 140, October T., 1932), charging aggravated assault and battery; sentences were suspended on the other bills. Thereupon, these appeals were taken. Motion was made to quash appeals Nos. 129 to 131, 133, 134 and 136 to 139, on the ground that the appeals were premature, as judgment of sentence had not been entered thereon. Motion to quash the nine appeals is sustained: Com. v. Mellon, 81 Pa. Superior Ct. 20; Com. v. Lipschutz, 89 Pa. Superior Ct. 142; Com. v. Cauffiel, 97 Pa. Superior Ct. 202. That leaves for our consideration the three appeals on which judgments of sentence were entered.

Between one and two o'clock on the morning of Friday, May 8, 1931, an explosion took place in Fort Washington, Upper Dublin Township, Montgomery County, in a house occupied by one, E. K. Jones, and Eliza Williams. As a result of investigation made by the appellants, Cassidy, Chief of Township Police, and Trunk, a county detective assigned by the district attorney to assist Cassidy, William Thomas Campbell was arrested on the following day, Saturday, May 9th, by these two officers. The prisoner was taken to Squire Crane for the purpose of lodging a complaint. The squire was absent from his office and the prisoner was taken to the Cheltenham Township lockup as there was no lockup in the Township of Dublin. He was incarcerated there until Wednesday morning, the 13th, when an information was lodged, charging him with arson. Campbell was then removed to Montgomery County prison, where he remained until Friday, May 15th. Cassidy had obtained from Squire Crane a discharge for Campbell and met Trunk at the district attorney's office, on Friday morning, who told him he had made arrangements with Rinalducci, Assistant District Attorney, to obtain custody of Campbell to question him, not knowing that Cassidy had obtained a discharge from the squire. The letter from the district attorney read as follows: ''Mr. Martin L. Horn, Warden, Montgomery County prison, Norristown, Pennsylvania. My dear Warden. Kindly release William Thomas Campbell in the custody of Detective Trunk and Chief Cassidy. He is wanted for questioning in the district attorney's office. For so doing this shall be your sufficient warrant.'' Trunk went over to the jail and procured the release of Campbell and took him to the district attorney's office, where he was joined by Cassidy and Rinalducci. Cassidy then gave the information that he had a discharge for the prisoner but was advised by Rinalducci not to lodge it

with the warden until after the questioning of the prisoner. The defendants concluded, owing to the alleged crowded condition of the district attorney's office, to take the prisoner to the state police barracks near Jeffersonville, a distance of ten or fifteen minutes by automobile. Sergeant Hughes, in charge of this state police sub-station, told the appellants that they could question Campbell in the attic on the third floor of the building as the other rooms would be in use. After lunch had been served, the appellants and their prisoner went to the attic between 1:30 and 2:00 o'clock and remained there until between 4:30 and 5:00 o'clock. Campbell testified that during this period of time, severe punishment was inflicted upon him by striking him with a blackjack on the shins and back, hitting him in the face with their fists, and suspending him to the rafters until he lost consciousness; that when he revived he had the sensation in his head of being pricked with an electric needle; that when these physical assaults upon him were unavailing to produce any confession, they attempted to scare him by having one of the state constabulary appear with a sheet wound around him to play the part of a ghost. When the party returned to Norristown, Campbell was lodged, not in the jail from whence he was taken, but in the Norristown lockup, where he remained, under the commonwealth's contention, until Tuesday, May 19th; but, according to the testimony offered upon the part of the appellants, he was released on Monday, the 18th. During this time, the defendant, Rinalducci, took him food. After his discharge, Campbell stated that when he was hobbling home he met a man by the name of William Stevenson. Stevenson testified that on a Tuesday in May around five o'clock, he met Campbell, who told him that he had just gotten out of jail; that Campbell had difficulty in walking and he stopped his team and assisted Campbell to get on the wagon. Witnesses

Bains and Riley both testified that one evening in May Campbell came straggling along to a gasoline station conducted by the former and he showed them severe injuries to both his legs and a large lump on his shoulder. At the suggestion of Bains, the next day, which proved to be May 26th, Campbell went to Dr. Shelley, who testified that he found four contusions on the right leg and five on the left leg, each contusion surmounted by a scab about the size of a half dollar, which he concluded were a week or ten days old. Owing to the statements Campbell made, Dr. Shelley took him to see Judge KNIGHT and the injuries were shown to him. The doctor was of the opinion that the injuries on the shins were the result of being struck by a blunt instrument or club and that the wound on the shoulder was due to a blow with an instrument. The defendants' contention was that the only injuries he had sustained were due to a fall on the concrete steps as he approached the barracks, but Dr. Shelley testified that, in his opinion, the injuries could not have been thus inflicted.

The appellants filed 67 assignments of error, 59 of which relate to alleged errors of the trial judge in his charge to the jury, in that the charge was not a calm, impartial and adequate summation of the evidence, but, to the contrary, that it was a strong and dramatic argument for the commonwealth, which tended to mislead the jury and prejudice them against the appellants, and, in addition, that the court was guilty of misstating the law applicable to the facts.

We will discuss the assignments which we deem merit especial consideration.

The appellants' first complaint is that the court stated to the jury: "Apparently the attorney general regarded the cases of some moment, because he sent here a member of his own staff." Because one of the defendants was an assistant district attorney and an-

other a county detective attached to the district attorney's staff, the president judge of the court of quarter sessions of Montgomery County requested the attorney general of the Commonwealth of Pennsylvania, under section 907 of the Act of April 9, 1929, P. L. 177, to designate a prosecutor to supersede the district attorney. The attorney general complied with the request and designated Hon. Herman J. Goldberg, Deputy Attorney General, to prosecute the case. It is conceded on all sides that this is a case of importance, not only to the defendants, but to the commonwealth, and we see no impropriety in the statement made by the court, nor do we think it was prejudicial to the defendants.

The jurors' attention was directed to the commitment, which was offered in evidence, requiring that the prisoner be kept by the warden until he should be delivered by due course of law; that the district attorney did not have the legal right to release a prisoner in the custody of police officers. That was a correct statement of the law. One in custody may not legally be removed from prison unless by habeas corpus or some other legal writ, except for trial, etc. The exceptions do not include the method adopted: Act of February 18, 1785, 2 Sm. L. 275, No. 12 (12 PS §1887). Although a practice may have existed in Montgomery County, as argued, to deliver a prisoner to possession of an officer representing the district attorney for the purpose of questioning, a custom contradictory to the express provisions of a statute does not make it legal: Com. v. Ellis, 46 Pa. Superior Ct. 72.

The jury's attention was called also to Rinalducci's furnishing food to the prisoner while in the Norristown lockup. The theory of the commonwealth was that Rinalducci did not furnish food to the prisoner as a benefactor primarily, as suggested by appellants, but that they took Campbell to the lockup, rather than to the county prison where his physical condition would

have been observed by those who had seen him earlier in the day, and it was to their interests not to inflict further punishment by depriving him of food. We find no objection to the form in which the trial judge submitted to the jury this controversy as well as other issues involved. It is entirely proper for the court to put appropriate questions, as to testimony adduced, in such a way as to call the jury's attention to the strength as well as the weakness of the arguments of both the commonwealth and the defense: Com. v. McKeehan et al., 93 Pa. Superior Ct. 348; Com. v. Fasci, 287 Pa. 1.

Attention was called to the defendant's contention that their reason for committing Campbell to the lockup was that a discharge had been furnished by the committing magistrate and that they were lodging him in there until a new commitment was made out. In this connection, however, it may be noted that at the time the prisoner was placed in the lockup, Cassidy had not lodged his discharge with the warden, so that there was no legal objection to returning the prisoner to the county jail. In addition, the warden testified that it is the practice to receive prisoners without a commitment until one is obtained and that Campbell would have been received. It certainly could not be assumed that a warden who has released a prisoner on the letter of the district attorney for the purpose of questioning would not receive the prisoner back after he had been subjected to an examination which the district attorney desired to give him. We do not regard the judge's reference to the commonwealth's contention on this phase of the case unduly emphatic in view of the facts. A jury might very well have had difficulty in reconciling this action with the innocence of the defendants.

Nor do we find merit in the appellants' argument that the learned trial judge gave undue prominence

to the theory of the commonwealth and minimized the evidence offered upon the part of the defense. In view of the length of the judge's charge, which was 29 pages long, he did make a comparatively brief reference to the testimony either for or against the defendants respecting the charge of aggravated assault and battery. The court, after correctly explaining the law pertaining to the charge of aggravated assault and battery, called attention to the fact that the charges were affirmed on one side and denied on the other, stating: "You will have to say who was telling the truth. It does not seem to be disputed that Campbell and the three defendants were in the attic of the barracks of the state police. Campbell says that while there the defendants abused him. The defendants deny the allegations of the prosecutor. What happened in the attic? From the whole evidence, from both disputed and undisputed facts, you must say what happened there." Surely, this was not unduly emphasizing the commonwealth's evidence on this branch of the case to the detriment of the defendants, especially in view of the burden of proof that was on the commonwealth. It is true he did not refer to the corroboration of the defendants' testimony that the police officers or the woman in the house heard no outcrys upon the part of Campbell, but Campbell did not allege that he uttered any cry. If there was a lack of detail in referring to that, or other corroborating, testimony offered, the court's attention should have been called to it at the end of his charge. The trial judge after concluding his instructions suggested that he may have omitted something, and if so, "counsel on both sides are not only invited but urged to direct the attention of the trial judge to the error, so that if inadvertent it may be corrected before too late. Have you anything to suggest, gentlemen?" Several suggestions were made but there was no complaint of inadequacy of the reference made to the

testimony relating to the charge of aggravated assault and battery, nor was a request made for further elaboration as to the testimony respecting that charge. Complaint can not now, therefore, be heard that the defendants were harmed by inadequacy of the charge. It was the appellants' duty to call the judge's attention to any facts that they desired to have amplified or to any error so that it might be corrected before harm was done. Kaier Co. Ltd. v. O'Brien, 202 Pa. 153; Com. v. Minney, 216 Pa. 149; Com. v. Thomas, 275 Pa. 137. We are not unmindful that our supreme court has ruled where a human life is at stake there should be a reference to the salient testimony by a trial judge to assist the jury in recalling the respective contentions of the parties: Com. v. Westley, 300 Pa. 16, 20. ''But the manner in which the evidence shall be dealt with must of necessity depend upon the circumstances in each case, and to a degree upon the line of arguments pursued by counsel in addressing the jury. It is only in exceptional instances, where, for example, it plainly appears that the charge is misleading, or that it has a tendency to withdraw the attention of the jury from material evidence, or to magnify the importance of the proofs on one side and belittle those on the other, that a trial judge will be reversed for inadequacy of charge in reviewing the evidence:'' Com. v. Colandro, 231 Pa. 343, 356. In view of no request for further instructions, we think this is not a case that requires a new trial for inadequate reference to the testimony.

The appellants also complain to the instructions to the jury as follows: ''Motive is not a factor in the correct determination of the guilt or innocence of a defendant.'' It very clearly appears from the evidence that the trial judge was referring to the crime of false imprisonment, which he was then discussing. We will not consider assignments of error complaining

of those parts of the charge which relate solely to an indictment upon which the defendants were not sentenced.

The appellants had no just cause to criticize the instructions of the court respecting the testimony of good reputation that was borne by them prior to the institution of these prosecutions. The defendants' fourth point, which is a correct statement of the law as to that character of the evidence, was affirmed by the court.

We have examined with care all the other assignments of error, including those relating to the alleged error of admission of certain evidence, but after carefully reviewing this long record of eight hundred pages, and giving due consideration to the able arguments of respective counsel, we find no error that warrants a reversal.

Judgment is affirmed, and it is ordered that each appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeals in this case were made a supersedeas.