## Commonwealth *v.* Liebowitz, Appellant.

Argued October 7, 1940.

Before

Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

B. D. *Oliensis,* with him *Samuel C. Sonnenfeld,* for appellant.

*David E. Groshens,* Assistant District Attorney, with him *Frederick B. Smillie,* District Attorney, for appellee.

OPINION BY RHODES, J., January 30, 1941:

Defendant was convicted and sentenced on three bills of indictment, Nos. 145, 146, and 147, April Term, 1938, Montgomery County. True bills were found on September 8, 1938. Each contained three counts; two counts charged him with larceny, and the third with receiving stolen goods. Defendant was tried on February 5, 1940. When the Commonwealth rested he demurred to the evidence relating to two of the indictments, Nos. 145 and 146. The demurrer was overruled, but the trial court directed a verdict in his favor as to the count in each of the bills relating to receiving stolen goods. Defendant did not take the stand, and no evidence was offered in his behalf. The jury returned a verdict of guilty on the two remaining counts of each of the three indictments. Motions for a new trial and in arrest of judgment were refused, and defendant sentenced. The present appeals followed.

Defendant now presents three questions for review: (1) Was it error to permit the Commonwealth to prove that defendant was known under an alias, and to have the indictments amended accordingly? (2) Was evidence admissible to show flight after his arrest and release on bail? (3) Should defendant's demurrer to

the evidence relating to indictments Nos. 145 and 146 have been sustained?

1. On the evening of May 25, 1938, about seven hundred people gathered in the auditorium of the Abington High School to witness the graduation exercises of the Abington Memorial Hospital nurses. Defendant was there. Three persons who were attending the exercises had their wallets stolen during the course of the evening. Defendant was immediately apprehended, and subsequently indicted and convicted of the thefts. When defendant was apprehended and arrested he gave his name as Charles Miller, and it was under this name that he was indicted. At the trial there was testimony that defendant's real name was Israel Liebowitz. Commonwealth's motion to amend the indictments by making defendant's name therein read "Israel Liebowitz, alias Charles Miller" was allowed, and the indictments were amended accordingly. Defendant now complains that the admission of this testimony and the amendment of the indictments to conform thereto constitute reversible error. Defendant says that the trial court had no power to sanction such an amendment. Evidence of defendant's real name was admissible. The name which he had assumed was before the jury through his own conduct. His real name was before the jury as the result of competent testimony. Amendment of the indictments to correspond was clearly proper. Such an amendment is authorized by section 13 of the Act of March 31, 1860, P. L. 427, 19 PS §433. *Com. v. Zinkcris*, 79 Pa. Superior Ct. 85.

Defendant, as disclosed by the testimony and as stated in the amended indictments, was known by two names. The word "alias" is used as the equivalent of "alias dictus," or "otherwise called," and indicates that he was called by one or the other of those names. Such designation in its nature was only descriptio personae. One of the purposes of section 13 of the Act of March

31, 1860, P. L. 427, 19 PS §433, is to allow a proper and complete identification of the accused, and permit a correct record of the proceedings to be made. This cannot be adequately accomplished without the use of the names under which defendant is known, at least in the court in which he is being tried.

The amendment of the indictments was "not material to the merits of the case." It made no substantive change; and defendant could not be "prejudiced thereby in his defense upon such merits." Nor was it violative of defendant's constitutional rights. Although at common law indictments could not be amended by the court after they had been found and presented by a grand jury (Ex Parte Bain, 121 U. S. 1), statutes have long allowed the amendment of indictments as to names and similar averments. "From time to time Parliament abolished the death penalty for various crimes until life was the forfeit for but few, and then came the Statute of 9 Geo. IV allowing amendments of indictments in misdemeanors. This was followed in 1851 by a Statute (14 and 15 Vict., c. 100) giving to the courts the broadest power to amend in felonies as well as misdemeanors, the preamble of the act being as follows: 'Whereas offenders frequently escape conviction on their trials by reason of the technical strictness of criminal proceedings in matters not material to the merits of the case; and, whereas, such technical strictness may safely be relaxed in many instances, so as to ensure the punishment of the guilty, without depriving the accused of any just means of defense; and whereas, a failure of justice often takes place on the trial of persons charged with felony and misdemeanor by reason of variance between the statement in the indictment on which the trial is had and the proof of names, dates, matters, and circumstances therein mentioned, not material to the merits of the case, and by the misstatement whereof the person on trial can-

not have been prejudiced in his defense. Be it therefore enacted, etc.' The reason set forth in the foregoing preamble led less than ten years later to our Act of March 31, 1860, P. L. 427, permitting amendments of indictments in all cases": *Com. v. Tassone,* 246 Pa. 543, at page 547, 92 A. 713, at page 714.

The Act of 1860 has been upon the statute books for over eighty years, and, so far as we can ascertain, section 13, 19 PS §433, has never been attacked as unconstitutional. We observe nothing wrong or unjust in this section. It does not offend our organic law in any respect which has been disclosed to us by counsel for defendant; and we find no constitutional barrier to the enactment of such a provision. Section 10 of the Declaration of Rights, PS Const. art. 1, § 10, recognizes indictment as the method of informing an accused person (in the words of section 9 of the Declaration of Rights) of the nature and cause of the accusation against him; an indictment can only be found in this Commonwealth by a grand jury; and the legislature cannot abolish the grand jury. *Dauphin County Grand Jury Investigation Proceedings (No. 2),* 332 Pa. 342, 353, 354, 357, 2 A. 2d 802, 804. But regulation of the mode of procedure under indictments may be made by legislation provided that the substance of the constitutional rights secured under the grand jury system is unimpaired; and unessential formalities of that system may be modified from time to time to meet the changing needs of the general welfare. *Com. v. Snow,* 269 Mass. 598, 169 N. E. 542, 68 A. L. R. 920. A statute which merely facilitates the pleading in a criminal case, such as one providing that formal statements as to time, place, value, and name of accused, are open to amendment on trial, is constitutional. See 1 Wharton's Criminal Procedure, 10th Ed., §131, p. 183.

In *Com. v. Gedzium,* 259 Mass. 453, 156 N. E. 890, the constitutionality of a similar Massachusetts statute

was upheld whereby it was enacted that a defendant might be described in an indictment by a fictitious name when his name was unknown to the grand jury, and that later his true name, if discovered, might be entered of record and used in subsequent proceedings.

Defendant's learned counsel argues, in effect, that even if the authority conferred by section 13 of the Act of March 31, 1860, P. L. 427, 19 PS §433, is constitutionally tenable, this authority does not allow the introduction, by amendment of the indictment at the trial, of an alias, because it would entail an attack upon, and an impeachment of, defendant's character, and thereby materially affect the merits of the case and prejudice him. We recognize that our law goes far in protecting persons charged with crime from all forms of prejudicial treatment, but it does not go to the extent of protecting a defendant in a criminal action who has gone through life using a variety of names from a disclosure of this fact.

In *People v. Everhardt,* 104 N. Y. 591, 11 N. E. 62, the New York Court of Appeals stated that it was not error to permit the swearing of jurors and witnesses by using the defendant's name and his aliases in the oath in the absence of proof that a juror had been prejudiced by reason of the numerous aliases. In *People v. Seidenshner et al.,* 210 N. Y. 341, at page 361, 104 N. E. 420, at page 427, the same court said: "Counsel for the defendants assert that error was committed on the trial because the defendants were described by 'nicknames, opprobrious and insulting in their character, carrying in their very terms implications against the morality, the method of life, and nationality of the various defendants.' It is necessary in an indictment to name the person charged with crime, and where the person is known by one or more names it is not error but many times necessary or desirable as a matter of

description to give the several names by which the person indicted is known."

A string of aliases might be so arranged as to carry the implication that a defendant belongs to the so-called criminal class, and thus half convict him as soon as the indictment is disclosed to the jury (*D'Allessandro v. United States*, 3 Cir., 90 F. 2d 640); but, as was said in *United States v. Solowitz*, 7 Cir., 99 F. 2d 714, 715, where the defendant when apprehended gave the authorities a fictitious name, and wherein the defendant made an argument similar to that in the instant case, "if a person has used names other than his right name, as the record discloses was the case so far as appellant is concerned, and the Government proves such aliases, there can be no legitimate complaint."

We find no error in the action of the trial court in amending the indictments according to the proof of defendant's real and assumed names. The third and fifth assignments of error are overruled.

2. The first, second, fourth, and sixth assignments of error relate to the admission of evidence showing defendant's failure to appear for trial after his arrest and release on bail, and the steps taken by the authorities to effect his recapture. The crimes with which defendant was charged were committed on May 25, 1938. The grand jury found true bills on September 8, 1938. The cases were listed for trial in September, and then continued. They were again listed for the week of October 3, 1938. At defendant's trial on February 5, 1940, the district attorney of Montgomery County testified as follows: "What conversation did you have with the defendant Miller at that time [October, 1938]? A. I turned towards him, and I said, 'Are you going to plead guilty to these bills?' He said, 'Well,' he said, 'When is it going to be heard?' 'Well,' I said, 'Right in here. Are you going to plead guilty or

are you not?' 'Are you guilty?' 'Yes,' he said. Well, I said, 'We will be ready with the case, to go on, I believe, in Court Room B.' But I turned around and went back in the court room, because I was trying a case at the time. Q. Did you see him afterwards? A. I never saw him afterwards until this day." He was apprehended in Orlando, Fla., about January 13, 1940.

Defendant maintains that flight, to be some evidence of guilt and to have any probative value, must occur immediately after the perpetration of the crime, and that evidence of flight four months after arrest and release on bail is inadmissible. The cases cited by defendant to uphold this view are concerned with factual situations where accused fled immediately after the crime was committed. We find no authority in this Commonwealth which holds that evidence such as now under consideration is incompetent and inadmissible. In *Com. v. Myers*, 131 Pa. Superior 258, 200 A. 143, similar evidence was there admitted, and this court, in sustaining the admissibility of that evidence, said (p. 264): "It is well settled that evidence of flight following the commission of a crime is admissible as having a tendency to prove the guilt of accused. See *Com. v. Fasci*, 287 Pa. 1, 134 A. 465; *Com. v. McMahon*, 145 Pa. 413, 22 A. 971; *Com. v. DeFelippis*, 245 Pa. 612, 91 A. 1059; *Com. v. Bezek*, 168 Pa. 603, 32 A. 109, 25 A. L. R. 886. We think the same rule is applicable where the accused flees after he has been arrested and admitted to bail. ...... Evidence as to appellant's conduct after the entry of bail would be competent and material if it would warrant the inference that it was because of appellant's consciousness of guilt that he had sought to avoid a trial." See, also, 22 Corpus Juris Sec., §625b, p. 960; *Com. v. Benedict*, 113 Pa. Superior Ct. 504, 173 A. 853. Evidence as to defendant's acts after the commission of the offenses with which he was charged was not confined to his conduct

after arrest and release on bail, but it established his flight from the scene of the thefts immediately after the commission thereof. He was pursued as he ran from the scene of the crimes, and was caught by a police officer. In connection therewith, the evidence as to his flight after release on bail, and attempt to evade trial, his recapture in the state of Florida, and the steps taken to effect his recapture was clearly admissible. See *Com. v. Fasci,* 287 Pa. 1, 5, 134 A. 465; *Lingo v. State,* 117 Tex. Cr. R. 582, 35 S. W. 2d 153; *Kanner v. United States,* 34 F. 2d 863. These circumstances the jury was entitled to consider as tending to disclose an intention on the part of defendant to avoid a trial because of consciousness of guilt. The first, second, fourth, and sixth assignments of error are overruled.

3. Defendant's third complaint requires consideration of the seventh and eighth assignments of error. The seventh assignment questions the admissibility in evidence of two wallets, the one belonging to Andres Andersen, and the other the property of Louis A. Dorward. Indictments Nos. 145 and 146 were concerned with these two wallets, respectively; and indictment No. 147 with the wallet of Howard W. Leedom. That the Leedom wallet was admissible in evidence, and that the evidence under this indictment was for the jury, defendant does not question. Andersen, Dorward, and Leedom had their wallets when they were in the Abington High School on the evening of May 25, 1938. Andersen missed his wallet while in the auditorium where the graduation exercises were being held. Dorward missed his wallet after he had left the high school building. Leedom came into contact with defendant while in the building, found that his wallet was gone, and thereupon pursued defendant who ran from the building. The chase was then taken up by an officer, John T. Furlong. In the course of the chase defendant

ran in and out between cars parked along the edge of the highway near the high school building, was caught by the officer, and thereupon dropped the wallet belonging to Leedom. The wallet was picked up by the officer, and immediately identified by Leedom as his wallet. It so happened that Honorable HAROLD G. KNIGHT, President Judge of the Court of Common Pleas of Montgomery County, had just left the building, and was seated in his automobile talking to Officer Furlong as the defendant came out of the building pursued by Leedom. The headlights of Judge KNIGHT'S car were lit, and as defendant ran in and out between the cars, pursued by Officer Furlong, he entered the area lit up by the headlights. During the course of defendant's flight, Judge KNIGHT saw him make a downward motion with his hands as though he were throwing something away. Judge KNIGHT at once examined the ground covered by defendant in his flight, found two wallets, and took them to the Abington police station. The wallets and contents were identified by their owners, Andersen and Dorward. At the trial the Andersen and Dorward wallets were identified by Officer Furlong as the wallets which Judge KNIGHT had brought into the police station, and they were again identified by their respective owners. At the trial Judge KNIGHT could only say that the exhibits looked like the two black wallets which he picked up along the course of defendant's flight, but Officer Furlong testified that they were the wallets which Judge KNIGHT had brought to the police station the evening of May 25, 1938. It is clear that, notwithstanding the testimony of Judge KNIGHT, the wallets were sufficiently identified. The fact that Judge KNIGHT, after nearly two years, could not positively identify the wallets as the ones which he picked up is a mere circumstance for the jury's consideration in connection with the uncontradicted testimony of Officer Furlong.

The three stolen wallets were found along the course of defendant's flight from the scene of the crimes. The three wallets when recovered contained their original contents. The evidence established that defendant ran from the high school building pursued by Leedom, who had lost his wallet in the building, and then by Officer Furlong; that as he ran between the parked automobiles he made a motion as if he threw something on the ground; that at the point where defendant made this motion one of the wallets was found; that a short distance beyond, along the course of defendant's flight, another stolen wallet was found; and that defendant was detected, as he was caught, throwing away the third wallet, which belonged to Leedom. The facts were sufficient to sustain the conclusion of the jury that defendant had stolen the wallets from Andersen and Dorward, as well as from Leedom, in the high school building where their owners had had them a short time before. "Flight is evidence of guilt, and in connection with other proof, may be the basis from which guilt may be inferred": *Com. v. Grazziani*, 86 Pa. Superior Ct. 571, at page 574.

The eighth assignment of error relates to the overruling of defendant's demurrer to the evidence under bills Nos. 145 and 146. We are unable to find any merit in defendant's position. Both Judge KNIGHT and Officer Furlong described the course of defendant's flight, and it was exactly along this course that the Andersen and Dorward wallets were found a few seconds after defendant had passed, followed by the officer. When he was caught, a few moments later, he endeavored to rid himself of the property which he had stolen from Leedom. In our opinion it would be difficult to find a group of facts involving human conduct which would more conclusively support but one inference. The argument to the contrary seems to run into metaphysical possibilities.

For the purpose of deciding upon the demurrer, there is admission of the facts which the evidence tends to prove and the inferences reasonably deducible therefrom. Act of June 5, 1937, P. L. 1703, 19 PS §481; *Com. v. Marino,* 142 Pa. Superior Ct. 327, 16 A. 2d 314. The trial court properly overruled the demurrer.

The seventh and eighth assignments of error are overruled. Likewise all remaining assignments of error, which need not be discussed, are overruled.

Judgments are affirmed.