UNITED STATES of America
v.
Vernon Lee **MULLEN.**
Cr. No. 13323.

United States District Court
E. D. Virginia,
Norfolk Division.
Dec. 28, 1967.

James A. Oast, Esquire and Alfred Swersky, Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Henry Kowalchick (Court Appointed), Norfolk, Va., for defendant.

## MEMORANDUM ORDER

KELLAM, District Judge.

Defendant was tried before a jury upon a charge that he did break and enter a certain building housing First and Second Class Petty Officers Mess Open, U. S. Naval Air Station, Oceana, with intent to commit larceny (Title 18, Section 13, U.S.C.A. and Title 18.1, Section 89, Code of Virginia, 1950, as amended). The jury returned a verdict of guilty. Defendant moved the Court to set aside the verdict and enter judgment of acquittal. The motion Challenges the sufficiency of the evidence to support the verdict.

Much of the evidence was circumstantial. Briefly stated, the evidence established these facts.

The scene of the crime was the rear of the Acey-Ducey Club, Oceana Naval Air Station, owned by the United States and operated by the United States Navy. Entrance to the site of the club was gained through a gate shown in "Government Exhibit 2". This photo shows a sign posted at the entrance, "No Visitors—All Delivery Vehicles proceed to Main Gate Except Club Vehicles". Government Exhibit 1 shows a large sign posted near the above mentioned entrance, "N.A.S. Oceana, North Gate".

At 2:30 A.M. in the morning of August 19, 1967, Special Police Officer Schimmel (employed at the Base), while on patrol of the area, as he approached the rear of the Acey-Ducey Club observed a black Plymouth. At about the same time he spied two men in the rear of the building start to run. He observed one of them drop an object. When the object was later found it turned out to be a metal tire iron. One of the men ran behind an oil tank. As Schimmel approached he observed the man lying flat behind the tank and in "considerable quantity of water which had collected in a low area". He came out upon order, after Schimmel had drawn his gun (Schimmel had previously fired one shot in the air to try to stop the men). The man was dressed in heavy gloves (although this was August and he was not employed to perform any labor). Schimmel discovered a man asleep in the Plymouth. In the Plymouth Station Wagon the officer found a sledgehammer, a claw hammer, a hacksaw and pliers. When F.B.I. Agent Don Ray arrived he located the tire iron above referred to near the oil tank where defendant was concealed. He took samples of the window paint which were sent with the tire iron to the F.B.I. Bureau for testing. Paint similar to the samples taken from the window which had been pried open was found on the tire iron.

412

It was established that the building in question was locked and all windows closed when the assistant manager left the premises late the night of August 18, 1967, or early the morning of August 19, 1967. When the manager came to the Club after being called on the early morning of August 19th, he observed footprints on the tops of tables in the Club, a window open, and damage to a hasp and lock on an inside door leading to the room where cigarettes are kept.

After being warned of his rights, defendant told one of the F.B.I. Agents he had been at a pool hall earlier that evening and that he gave a man $2.00 to drive him home in the Plymouth and that when he was observed by Schimmel he was in the process of being robbed. The evidence established that the station wagon in question belonged to Thornton Johnson, who had loaned it to his son, Joseph Johnson. Earlier that evening defendant had been in a place called "Queenies" in Norfolk in company of Joseph Johnson, Barbara Vaughan, and one Clark (the one found asleep in the wagon at the Acey-Ducey Club); that defendant, Clark and Johnson were all in the wagon when Barbara was driven home in Norfolk about 10:00 or 10:30 P.M. on August 18, 1967.

"Government Exhibit 3" shows the raised window, the window pried open to gain entrance to the building; "Exhibit 4" shows the window leading to the room where cigarettes were kept. A visual look is better than words can explain.

There is no question that there was a breaking and entry. Likewise the intent is clear. Defendant says the evidence does not meet the required burden to connect him with the crime.

■ The evidence, facts and circumstances must be construed in the light most favorable to the Government and the finding of a jury must be upheld if there is evidence to support it. Glasser v. United States, 315 U.S. 60 at page 80, 62 S.Ct. 457, 86 L.Ed. 680, Moore v. United States, 271 F.2d 564 (4th Cir. 1959), United States v. Luxenberg, 374 F.2d 241 (6th Cir. 1967).

■ When Officer Schimmel approached defendant he (and another man with him) fled. The jury had a right to consider this circumstance as tending to show consciousness of guilt on the part of defendant. United States v. Commonwealth of Pennsylvania, 267 F.Supp. 316 (E.D.Pa.1966), Nance v. Commonwealth, 203 Va. 428, 124 S.E.2d 900, Sturgis v. Commonwealth, 197 Va. 264, 88 S.E.2d 919, Bowie v. Commonwealth, 184 Va. 381, 35 S.E.2d 345, Duty v. Commonwealth (1923) 137 Va. 759, 119 S.E. 62. In United States v. Commonwealth of Pennsylvania, supra, at page 319, the Court said:

"Defendant's flight upon accusation is indicative of a consciousness of guilt. Commonwealth v. Myers, 131 Pa.Super. 258 (1938); Commonwealth v. Fasci, 287 Pa. 1, 134 A. 465 (1926); Commonwealth v. Coyle, 415 Pa. 379, 393, 203 A.2d 782 (1964). The Federal cases are to the same effect. Hunt v. United States, 115 U.S.App.D.C. 1, 316 F.2d 652 (1963); Gicinto v. United States, 212 F.2d 8 (8th Cir. 1954), where the court stated: 'And evidence of flight is always admissible, especially when the conduct of the defendant is apparently inconsistent with innocence.' The theory on which flight is admissible is that it shows consciousness of guilt. Thus, in rebuttal, the defendant may show a reason for his departure, Commonwealth v. Myers, supra. Gaspero did not take the stand to explain why he ran out of the shop when confronted with the slips. 'Ordinarily, flight or concealment, standing alone, is insufficient to convict. When accompanied by other evidence, the flight or concealment may justify an inference of guilt.' Commonwealth v. Grazziani, 86 Pa.Super. 571 (1925).

"In Government of the Virgin Islands v. John Lake, 362 F.2d 770, Opinion filed June 22, 1966, the United States Court of Appeals for the Third Circuit said:

'If, however, the prosecution proves facts from which an inference relevant to the question of the accused's

guilt may reasonably be drawn, the burden is necessarily cast upon the accused of going forward with evidence upon the particular point to which the inference relates if he desires to rebut it.' "

In Duty v. Commonwealth, supra, 119 S.E. at page 64 the Court said:

"The correct doctrine on the subject is stated in Anderson's Case, [Anderson v. Com.] 100 Va. 860, 863, 42 S.E. 865, cited with approval in Jenkins' Case, 132 Va. 692, 696, 111 S.E. 101, 103, [25 A.L.R. 882,] as follows:

'When a suspected person attempts to escape or evade a threatened prosecution, * * * though the inference [of his guilt] is by no means strong enough by itself to warrant a conviction, yet it may become one of a series of circumstances from which guilt may be inferred. An attempt to escape or evade prosecution is not to be regarded as a part of the res gestae, but only as a circumstance to be considered by the jury along with the other facts and circumstances tending to establish the guilt of the accused. The nearer, however, the commission of the crime committed, the more cogent would be the circumstance that the suspected person attempted to escape, or to evade prosecution; but it should be cautiously considered, because it may be attributable to a number of other reasons, than consciousness of guilt'—citing Wharton's Cr.Ev. §§ 750, 751. See, also, Williams' Case, 85 Va. 607, 613, 8 S.E. 470."

See also Nance v. Commonwealth, supra, where the Court at page 904 said:

"The effort to escape by flight at an excessive speed in itself is one of a series of circumstances from which guilt may be inferred. Duty v. Commonwealth, 137 Va. 759, 119 S.E. 62."

■■ There is no question of the fact that a charge of breaking into a building may be founded on circumstantial evi-

dence. In Fout v. Commonwealth, 199 Va. 184, 185, 98 S.E.2d 817, at page 821:

"The guilt of one breaking into a building may be established by circumstantial evidence. Direct testimony on the part of someone who saw him in the commission of the act or near the scene of the crime is not necessary, and it is unusual in cases of this character. Wilborne v. Com., 182 Va. 63, 66, 28 S.E.2d 1."

The finding of the burglarious tools was a circumstance to be considered by the jury. See Wilborne v. Commonwealth, 182 Va. 63, 28 S.E.2d 1, 3, where the Court said:

"In 12 C.J.S. Burglary, § 51, pp. 724, 725, it said: 'After preliminary proof of a burglary, it is competent for the state to prove that defendant was found in the possession of burglarious tools or implements shortly after the alleged burglary, and to introduce the tools or implements in evidence, such as explosives, "jimmies," bits, chloroform, and flash lights. Such evidence, it is said, is just as competent as evidence of the possession of stolen property; but, "like the possession of stolen goods, the possession must be recent, or soon after the commission of the offense," * * *.' See, also, 9 Am.Jur., Burglary, § 66, p. 273; 1 Wigmore on Evidence, 3d Ed., § 153, p. 600. People v. Courtney, 178 Mich. 137, 144 N.W. 568, 573, 574.

"In People v. Parkinson, 138 Cal.App. 599, 33 P.2d 18, 22, it is said: 'While the evidence of the possession of stolen goods, and we may add, of burglarious tools, shortly after the commission of an offense may not, standing alone, be sufficient to sustain a verdict, it requires only slight additional testimony' to warrant a finding of guilt. See, also, 12 C.J.S. Burglary § 62, p. 741."

\* \* \* \* \* \*

"The possession by the accused of these articles cast upon him the duty of bringing forward evidence to explain in what manner he acquired them, and the absence of such evidence justified

the inference that he was the perpetrator of the crime."

See also United States v. Luxenberg, 374 F.2d 241 (6th Cir. 1967).

■ Defendant says there was no direct proof of any intent to commit a felony after entry was gained to the building, since nothing was reported as stolen; nor was there any evidence he was aiding or abetting the commission of the offense. The question of intent was exclusively a question of fact to be determined by the jury. United States v. Luxenberg, 374 F.2d 241 (6th Cir. 1967). In Banovitch v. Commonwealth, 196 Va. 210, 83 S.E.2d 369, 373:

"The specific intent may, like any other fact, be shown by circumstances. Intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it. Kuenzli v. State, 208 Wis. 340, 242 N.W. 147; Merritt v. Commonwealth, 164 Va. 653, 662, 180 S.E. 395, 399."

See State v. Tippett, 270 N.C. 588 (1967), 155 S.E.2d 269, 274, where the Court said:

"The intent with which an accused broke and entered may be found by the jury from evidence as to what he did within the house. State v. Reid, 230 N.C. 561, 53 S.E.2d 849. However, the fact that a felony was actually committed after the house was entered is not necessarily proof of the intent requisite for the crime of burglary. It is only evidence from which such intent at the time of the breaking and entering may be found. Conversely, actual commission of the felony, which the indictment charges was intended by the defendant at the time of the breaking and entering, is not required in order to sustain a conviction of burglary. State v. Reid, supra; State v. Hooper, 227 N.C. 633, 44 S.E.2d 42; State v. McDaniel, 60 N.C. 245. The offense of burglary is the breaking and entering with the requisite intent. It is complete when the building is entered or it does not occur."

Defendant also says the government failed to show any agreement between the parties to commit the offense; that the mere fact defendant was present with another when a breaking occurred does not establish an agreement to commit the offense. In State v. Belcher (1939), 121 W.Va. 170, 2 S.E.2d 257, at page 259, it was said:

"It is pointed out by attorneys for the defendant that the state has been unable to show that there was any verbal understanding and agreement that the three defendants should break and enter Cunningham's store room. We do not think this is required. When the commission of a felony is being undertaken with the consequence that some offense not anticipated nor intended arises out of the effort to carry out the original plan the criminal intent is attributable to the unintended conduct of the accused. State v. Wisman, 93 W.Va. 183, 116 S.E. 698; 1 Brill, Cyc. of Crim.Law, sec. 508. The rule is applicable to accomplices or to those guilty as principals in the second degree. The three defendants were admittedly in West Charleston for the purpose of committing a felony. It is unnecessary for the State to show that there was detailed conformity of the three minds upon the course to be pursued. The practical result of such a rule would be to render the conviction of accomplices extremely unlikely, if not impossible."

■ Circumstantial evidence may support a verdict of guilty and it need not exclude every reasonable hypothesis consistent with innocence. See Moore v. United States, 271 F.2d 564 at page 568 (4th Cir. 1959), where the Court said:

"Circumstantial evidence may support a verdict of guilty, though it does not exclude every reasonable hypothesis consistent with innocence. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. If it be sufficient to support an inference of guilt and the defendant fails to offer a reasonable explanation consistent with innocence, such failure may be consider-

ed by the trier of fact. Wilson v. United States, 1896, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Jenkins v. United States, 4 Cir., 1932, 58 F.2d 556. It is not necessary, in appraising the sufficiency of the evidence, that this court be convinced beyond a reasonable doubt of the guilt of the defendant. Bell v. United States, 4 Cir., 1950, 185 F.2d 302. The question is whether the evidence, construed most favorably for the prosecution, is such that a jury (or trial judge) might find the defendant guilty beyond a reasonable doubt. Bell v. United States, supra; United States v. Brown, 2 Cir., 1956, 236 F.2d 403; Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391."

In United States v. Burkeen, 350 F.2d 261 (6th Cir. 1965), at 264, where it quoted the following:

"In Holland v. United States, 348 U.S. 121, at p. 140, 75 S.Ct. 127, at p. 137, 99 L.Ed. 150, the Court said:

'Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.'"

See also United States v. Luxenberg, supra, United States v. Chappell, 353 F.2d 83, 84 (4th Cir. 1965), White v. United States, 279 F.2d 740 (4th Cir. 1964). In State v. Battle, et als., 267 N.C. 513, 148 S.E.2d 599 (1966), all parties were convicted where only one of the parties was found in the building while the others remained in the car. In State v. Lakey, 270 N.C. 786, 154 S.E.2d 900, at page 901, the Court said:

"These facts present substantial evidence of all the material elements of felonious breaking and entering. ' "If there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss.' State v. Stephens, 244 N.C. 380, 93 S.E.2d 431; State v. Thompson, 256 N.C. 593, 124 S.E.2d 728."

State v. Nichols, 268 N.C. 152, 150 S.E. 2d 21 (1966) is so similar to the facts here, it bears quoting:

"Taken in the light most favorable to the State the evidence shows that a man from New York in a Maryland car is in Greenville, North Carolina, at 2 o'clock in the morning; that he and another occupant of the car get out of it and go to the door of the Harris Super Market; that a sound of shaking is heard by the officer; and that the glass rattled and the door came open, and that immediately afterwards the two men get back in the car and leave. A few blocks away they are apprehended and an examination of the car discloses the possession of a combination of articles that indicate substantial evidence that they are not being intended for use in any legitimate business.

"[1] While gloves, tapes, chisels, crowbars, hammers and punches all have their honest and legitimate uses, when no explanation is offered for this combination of articles by a man several hundred miles from his home, in the middle of the night, it is ample to sustain a possession of wrongful and unlawful possession of tools used in store breaking.

"[2] The fact that the shaking of the door and its opening was not followed by a physical entrance into the

building does not prevent a finding by the jury that they broke and entered the building. The officers' car was close by and the men apparently became frightened and nervous from the sound of glass and the opening of the door, and fled. They had actually opened the door although they had not entered and the crime was complete upon the finding by the jury of the overt act and felonious intent which was amply supported by the evidence.

"In State v. Smith, 266 N.C. 747, 147 S.E.2d 165, it is said: '[I]f a person breaks or enters * * * with intent to commit the crime of larceny, he does so with intent to commit a felony, without reference to whether he is completely frustrated before he accomplishes his felonious intent * * * [H]is criminal conduct is not determinable on the basis of the success of his felonious venture'."

■ It may well be that defendant was not the ring leader, but no reasonable explanation is offered of why he was on government property at two o'clock A.M. on August 19, 1967, wearing working gloves, when the only work to be done was to break and enter a building and take government property; why he ran when accosted by the police officer, hid behind an oil tank and in a considerable amount of water. His only explanation was that "he was being robbed". He was acquainted with the other person in the car, and supposedly with the man who escaped. He made no explanation of the tire iron, the sledgehammer and other tools. If in fact he was being robbed there was no reason he should not have given all of the facts and circumstances of the robbery to the police and the F.B.I. The jury had a right to consider all of this, along with the other evidence.

■■ During the trial counsel raised the question of the right of Schimmel to arrest and hold defendant. However, this was not argued in the motion for a directed verdict. Defendant contended Schimmel had not been duly appointed a special police officer and therefore the arrest was unlawful. In addition to having committed a felony, the defendant was in fact committing the misdemeanor of trespass upon government property after a sign had been posted directing him not to do so. See Jordan v. Commonwealth, 207 Va. 591, 151 S.E.2d 390 (1966), 151 S.E.2d 390. Even if Schimmel was not a police officer, he, as a private citizen, could arrest for a felony committed in his presence. Montgomery Ward v. Freeman, 4 Cir., 199 F.2d 720; Lima v. Lawler, D.C., 63 F.Supp. 446; Seawell v. United States, 4 Cir., 243 F.2d 909; Crawford v. United States, 4 Cir., 160 F.2d 629; United States v. White, 4 Cir., 342 F.2d 379; Katz v. Peyton, 232 F.Supp. 131; Byrd v. Commonwealth, 158 Va. 897, 164 S.E. 400.

What was said by Judge Dalton in Dawson v. Peyton, 246 F.Supp. 444 (E.D. Va.1965), affirmed 4 Cir., 359 F.2d 149, is particularly applicable here:

" * * * whether you be the ringleader or whether you are aiding and abetting the principal in the commission of an offense, you are into it, just as much one way as you are the other. Whether you are a follower, or whether you are the leader, if you go about in the violation of the law in breaking and entering or in larceny, you can have a small part and you are just as guilty in the eyes of the law as if you were the ringleader."

The evidence supports the verdict of the jury and the defendant's motion is denied. Judgment will be entered on the jury verdict.