Thomas William **THOMPSON**, Petitioner,

v.

**A. E. SLAYTON**, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 71-C-38-L.

United States District Court,
W. D. Virginia,
Lynchburg Division.

Sept. 27, 1971.

William P. Robinson, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, District Judge.

This case comes before the court upon a petition for a writ of habeas corpus filed *in forma pauperis* by Thomas William Thompson, a state prisoner, pursuant to 28 U.S.C. §§ 2241 and 2254. The petition was originally filed in the United States District Court for the Eastern District of Virginia on August

3, 1971, and, by order dated August 16, 1971, was transferred to this court.

Petitioner is currently serving sentences totalling thirty (30) years in the Virginia State Penitentiary pursuant to a judgment of the Circuit Court of Campbell County imposed on October 26, 1970, for armed robbery (ten years) and attempted murder (twenty years). The conviction occurred after a trial by jury in which petitioner, represented by court-appointed counsel, entered a plea of not guilty.

In the present petition Thompson alleges several errors:

1. Admitted testimony defining the extent of the victim's injuries was prejudicial.

2. An incriminating statement admitted at trial should have been excluded as involuntary.

3. Physical evidence and related testimony admitted at trial was the product of an illegal search and seizure.

4. The lineup in which the victim identified the petitioner was illegal.

5. The petitioner was entitled to be tried by the court without a jury upon his plea of not guilty.

■ On July 6, 1971, Supreme Court of Virginia refused petitioner's appeal in which he had presented the same claims alleged herein. Having presented them to the state's highest court, petitioner has exhausted his available remedies in compliance with the provisions of 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963). We now review petitioner's claims.

■ First, petitioner claims that the treating physician's conclusion, that the victim, Mr. League, would be permanently paralyzed because of the gunshot wounds inflicted upon him by the petitioner, should have been excluded as prejudicial. Admissibility of evidence is normally a matter of state law and procedure not involving a constitutional issue, and it is only in situations impugning fundamental fairness or infringing a specific constitutional protection that a federal question arises. Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960); Hawks v. Peyton, 288 F.Supp. 94 (W.D.Va.1968). There are no special circumstances here and we therefore find that no right of petitioner was violated by admitting the evidence.

Second, petitioner contends that an incriminating statement made to a police officer who repeated it at trial should have been excluded as involuntary. The facts are not in dispute. At approximately 6:10 a. m. on June 27, 1970, petitioner and one other man were arrested in Altavista, Virginia, while fleeing from the scene of a robbery and shooting allegedly perpetrated by petitioner, his companion and one other several hours before at a service station near Lynchburg. Minutes after his arrest petitioner was informed of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Responding to inquiry petitioner stated that he understood these rights and chose to remain silent, and he requested the presence of counsel. At 7:30 a. m. the same day the police searched petitioner and found, among other items, $25.50 in currency and change, at which point petitioner stated that $1.75 of the money was his. This statement was not elicited through any form of interrogation by the police.

■■ Whether or not a statement is made voluntarily depends on the circumstances surrounding its utterance. Boulden v. Holman, Warden, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). There is no dispute that petitioner understood his rights when he was initially advised of them. During the search he was not readvised of these rights but the statement asserting ownership of part of the money, spoken less than an hour and a half after he was so advised, was not the product of interrogation. We find that the statement was spontaneous and voluntary; the trial court committed no error in admitting the

statement. Cf. Miranda v. Arizona, *supra*.

Third, it is alleged that certain physical evidence, and the testimony relating to its removal from an automobile, should have been excluded as the products of an illegal search and seizure. At the trial Officer Guill of the Altavista Police stated that he had stopped a car containing three men whom he thought matched the description of men who reportedly had robbed the service station near Lynchburg. The driver got out of the automobile and as Officer Guill began to check his registration, petitioner and the third felon emerged and ran from the car. After finding someone to watch the vehicle, the policeman joined in the pursuit of the fleeing occupants.

At the pre-trial hearing on the motion to suppress the evidence, Trooper Powell of the Virginia State Police revealed the circumstances surrounding his removal of the articles from the automobile. He testified that he removed the items sometime between 3:00 a. m. and 3:30 a. m. on the day of the robbery. At that time the driver of the automobile had already been arrested, but petitioner and the other felon were still at large. Without a search warrant Powell opened the unlocked door on the passenger side; as he did so two $1.00 bills fell out onto the curb. He then removed a .22 caliber pistol, a pair of sunglasses, and a screwdriver from the front seat, a .32 caliber pistol from the right front floorboard, and some change from the right rear floorboard. No one had searched the vehicle before Powell. He further testified that prior to the removal all items except a small amount of change were clearly visible from the outside. A photograph exhibited by the commonwealth attorney supported this assertion.

Thompson specifically argues that the search of the automobile was not incidental to an arrest, so that the introduction of the physical evidence and the related testimony violated his Fourth Amendment rights as interpreted by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The claim is without merit since Powell conducted no search as that term has been interpreted. In Smith v. United States, 2 F.2d 715, 716 (1924) the Fourth Circuit noted:

> A search implies some exploratory investigation. It is not a search to observe that which is open and patent, in either sunlight or artificial light.

See also Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); United States v. Brown, 383 F.2d 781 (4th Cir. 1967). It is settled that "objects falling into plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." Harris v. United States, 390 U.S. 234, 236, 88 S. Ct. 992, 993, 19 L.Ed.2d 1067 (1968); see Ker v. California, *supra*; United States v. Lee, *supra*. The "plain view" doctrine has been frequently applied to seizures involving automobiles. See *e. g.* Harris v. United States, *supra*; United States v. Mullen, 278 F.Supp. 410 (E.D. Va.1967) aff'd 416 F.2d 456 (4th Cir. 1969); Carter v. Commonwealth, 209 Va. 317, 163 S.E.2d 589 (1968) cert. den. 394 U.S. 991, 89 S.Ct. 1479, 22 L. Ed.2d 766 (1969); One 1963 Chevrolet Pickup Truck, et al. v. Commonwealth, 208 Va. 506, 158 S.E.2d 755, cert. den. 391 U.S. 964, 88 S.Ct. 2032, 20 L.Ed.2d 877 (1968).

■■ Only the two pistols were admitted into evidence and it is undisputed that both were in "plain view" of Trooper Powell and of others prior to their removal. The vehicle from which the items were taken rested in a public road, at a time when one of the felons had been arrested and the arrest of the others was imminent. Only a small amount of change may not have been clearly visible to someone standing on the outside of the car before it was entered. In light of the other items found we do not think that it was unduly prejudicial to admit testimony regarding the partially hidden change. Moreover the Supreme Court has recently held proper the ad-

mission of evidence seized from an automobile, in which the defendant was riding at the time of his arrest, after the vehicle was taken to the police station and there searched without a warrant. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The Court noted that "(i)n terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office", noting that the former may be searched without a warrant in situations that would not justify the search without a warrant of the latter. *Id.*, at 48, 90 S.Ct. at 1979. Under *Chambers* we are compelled *a fortiori* to hold that the testimony relating to the items seized was properly admitted, and that petitioner's Fourth Amendment rights have not been violated. Nor did Powell violate Section 19.1–88 of the Code of Virginia, which makes a warrant the prerequisite of a search, because that provision in effect affords only the same protection as that afforded by the Fourth Amendment. Carter v. Commonwealth, *supra.*

Fourth, petitioner claims that the pre-trial procedure was so unfair and suggestive as to deny him due process of law. The lineup was conducted in the county jail in Rustburg on October 7, 1970, a little more than three months after the robbery. Counsel for both petitioner and a co-defendant were present at the lineup. Also present was Ted Thompson, a reporter for the Lynchburg News, who testified at the pre-trial hearing on the motion to suppress the in-court identification that six men, all Negroes, participated in the lineup, that all of them were dressed alike in prison garb and that all were of the "same color and general appearance". He could not make any determination of the range of the participants' ages. The men's haircuts were "all about the same" although none of them appeared to have hair quite so "bushy" as the petitioner's. Thompson noted that League, the victim, clearly and without hesitation identified petitioner and his co-fel-

on in the lineup as the men who had robbed and shot him. Petitioner testified at the hearing that no other participant had hair as full as his, that his skin complexion was lighter than the others and that all of the men were older, "in their forties, forty-one or forty-two" (At least one of the participants, the co-felon, was in his late twenties). Although not denied the privilege of doing so, petitioner's counsel did not question League about the lineup procedure either at the hearing or at the subsequent trial.

There is no evidence that League saw the petitioner at his co-felon's separate trial. Nor is there any evidence that League saw the petitioner or his photograph at any time between the robbery and the lineup. At the trial he again clearly and unequivocally identified petitioner as the man who had shot him during the robbery. The lineup identification was not introduced at the trial.

■■ Whether or not the conduct of the lineup was so unduly prejudicial as to taint League's in-court identification of Thompson must be determined on the "totality of the surrounding circumstances." Coleman v. Alabama, 399 U.S. 1, 4, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); see Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). During the robbery League was able to observe petitioner for several minutes as they faced each other in the lighted station office. At the lineup we note the requirements laid down in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) were met, since petitioner had the benefit of counsel to supervise the lineup procedure. Petitioner's counsel admitted that the only possible difference between petitioner and the other participants in the lineup was the fullness of petitioner's hair. League stated that he based his identification on other factors as well; from the record it appears that the

most definitive feature was petitioner's face. Moreover he had no difficulty picking Thompson out of a lineup in which all participants were of the same dress, general appearance and stature. Since League's positive identification appears to have arisen for no reason other than his opportunity to observe him during the robbery, we cannot say that the difference, if any, in the length of petitioner's hair is sufficient to render the lineup procedure unfair. Indeed it would appear that the police minimized the differences of the participants as reasonably as it could have been done. We hold therefore that the conduct of the lineup was not so "unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law. Stovall v. Denno, *supra*, 388 U.S. at 302, 87 S.Ct. at 1972, 18 L.Ed.2d 1199; Foster v. California, *supra*.

In his reply to respondent's motion to dismiss petitioner claims that League confronted him prior to the lineup, by which League was able to familiarize himself with petitioner's appearance and therefore give a positive but unfair identification of petitioner in the lineup. Petitioner has not presented this claim to any court in any prior proceeding; he has therefore failed to exhaust his available state remedies in compliance with the provisions of 28 U.S.C. § 2254. If petitioner pursues it in the state courts through state habeas corpus proceedings under Section 8–596 et seq. of the Code of Virginia, we should advise that he develop his claim more fully. There is no evidence whatsoever that League confronted him before the lineup. We note also that petitioner had ample opportunity at the pre-trial hearing to submit this claim, especially when he testified about the composition of the lineup. Moreover petitioner and Thompson, the reporter present at the lineup, testified that the lineup was already formed when League emerged from the ambulance in which he had been brought to the county courthouse and jail.

Petitioner's final claim is that he was entitled to be tried by the court without a jury. This claim is equally without merit. Section 19.1–192 of the Code of Virginia provides that after a plea of not guilty a waiver of a jury trial is permitted only if the commonwealth attorney and the court concur. Here neither concurred. The existence of an absolute right to a jury trial in criminal prosecutions does not for that reason lead to a conclusion that one has a right of equal import to waive a jury trial. May v. Peyton, 268 F.Supp. 928 (W.D.Va.1967). See Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (federal prisoners). Petitioner was properly tried by a jury.

For the foregoing reasons, it is ordered that the petition for a writ of habeas corpus be dismissed with prejudice and the relief denied. The dismissal is without prejudice to the claim not adjudicated herein, and petitioner may present that claim to this court after he has exhausted his available state remedies.

If the petitioner wishes to appeal this judgment or any part thereof, he may do so by filing with the clerk of this court a notice of appeal. Failure to file the notice of appeal within 30 days may result in a denial of the right to appeal. The notice shall state the following:

1. the party or parties taking the appeal;

2. the judgment, order or part thereof appealed from; and

3. the court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.