J-A17024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHELLE BOWERS | : | |
| | : | |
| Appellant | : | No. 2722 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 27, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001116-2022

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED NOVEMBER 26, 2024**

Appellant Michelle Bowers appeals from the judgment of sentence imposed following her bench trial conviction for conspiracy to commit robbery and related offenses. After careful review, we affirm Appellant's convictions, but vacate the judgment of sentence and remand for resentencing.

We adopt the trial court's summary of the facts. **See** Trial Ct. Op., 12/5/23, at 4-8.[1] Briefly, on December 22, 2021, at approximately 6:00 p.m. Appellant drove a Dodge Charger to the Super Drugs Pharmacy on North 5th Street in Philadelphia and parked behind it. Michael Nixon, Appellant's co-defendant, exited the Charger. Mr. Nixon walked into the employee parking

_____

[1] We note the trial court's opinion contains typographical errors on pages 4 and 5. The name of the pharmacy on the last paragraph on page 4 of the trial court's opinion should read "Super Drugs Pharmacy." Additionally, the first two citations in the second paragraph on page 5 of the trial court's opinion should read "N.T. 09/29/22, 42," and "N.T. 09/29/22, 43," respectively.

lot and approached the back door of the pharmacy. When Christina Palengas, the pharmacist, opened the back door, Mr. Nixon pointed a gun at her and entered the pharmacy. Mr. Nixon demanded that Ms. Palengas, and other pharmacy employees, fill bags with narcotics. While Mr. Nixon was inside, Angel Malvonado, a delivery driver for the pharmacy, parked in the employee parking lot. When Mr. Malvonado opened the back door of the pharmacy, Mr. Nixon tried to force Mr. Malvonado inside. Mr. Malvonado fled, and Mr. Nixon pursued him. Appellant, sitting in the driver's seat of the Charger, honked its horn and pointed at Mr. Malvonado. Mr. Nixon struck Mr. Malvonado with the gun and kicked him while he was on the ground. Mr. Nixon then reentered the pharmacy and retrieved the bags filled with bottles of narcotics. Mr. Nixon got in the Charger and Appellant drove off as a police car was approaching her from behind. Mr. Malvonado told the police officers about the robbery of the pharmacy and the officers set off in pursuit. Eventually, approximately twenty other police officers took part in a high-speed chase of Appellant and Mr. Nixon. During the pursuit, Mr. Nixon threw items out of the window of the Charger. The police eventually apprehended Appellant and Mr. Nixon. The police recovered pill bottles and loose pills from the Charger.

Following a bench trial held on September 29, 2022 and October 7, 2022, the trial court found Appellant guilty of conspiracy to commit robbery, robbery, theft by unlawful taking, receiving stolen property, recklessly

endangering another person (REAP), and fleeing or attempting to elude police officer.[2]

On June 15, 2023, the trial court sentenced Appellant to concurrent terms of two to four years' incarceration for robbery and conspiracy. Additionally, the trial court imposed terms of ten years' probation for both robbery and conspiracy, which was to run concurrent to the terms of incarceration for those convictions. The trial court also sentenced Appellant to two years' probation for REAP and seven years' probation for fleeing or attempting to elude police officer, which ran consecutive to the sentences of incarceration.

Appellant filed a timely post-sentence motion challenging the sufficiency and the weight of the evidence, which the trial court denied on September 27, 2023. That same day, the trial court entered an amended sentencing order (backdated to June 15, 2023) clarifying that Appellant's sentences for robbery and conspiracy run concurrently and ordering that the Pennsylvania Parole Board supervise Appellant's probation instead of the Philadelphia Adult Probation and Parole Department. *See* Am. Sentencing Order, 9/27/23, at 1.

_____

[2] 18 Pa.C.S. §§ 903, 3701(a)(1)(i); 3701(a)(1)(i); 3921(a); 3925(a); 2705; and 75 Pa.C.S. § 3733(a), respectively.

J-A17024-24

Appellant filed a timely notice of appeal.[3]  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues on appeal:

1. Whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish all elements of the offenses of conspiracy, robbery, theft, and receiving stolen property beyond a reasonable doubt?

2. Appellant's convictions for conspiracy, robbery, theft, and receiving stolen property [are] against the weight of the evidence and shocks the conscience where it rests on no more than mere suspicion and surmise.

Appellant's Brief at 1 (formatting altered).

Following our review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the trial court's opinion.  **See** Trial Ct. Op. at 8-

_____

[3] Appellant's notice of appeal erroneously stated that the appeal is from "the **order** entered in this matter on the 27th day of September, 2023."  Notice of Appeal, 10/19/23, at 1 (emphasis added).  Appellant attached a copy of the trial court's order denying her post-sentence motion to her notice of appeal. However, our case law has explained that where a trial court amends a judgment of sentence during the period it maintains jurisdiction, the direct appeal lies from the amended judgment of sentence and not the order denying post-sentence motions.  **See Commonwealth v. Garzone**, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010); **see also Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (stating that in a criminal matter, the "appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions").  Therefore, Appellant's appeal properly lies from the amended **judgment of sentence** entered on September 27, 2023.  The caption was corrected accordingly.

- 4 -

17.[4]  The trial court thoroughly addressed Appellant's claims and correctly concluded that she was not entitled to relief.  Specifically, we agree with the trial court that there was sufficient evidence to sustain Appellant's convictions.  ***See id.*** at 8-16.  Further, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim.  ***See id.*** at 16-17.  Therefore, we affirm Appellant's convictions.[5]

### Legality of Sentence

Finally, we must address the legality of Appellant's sentence.  ***See Commonwealth v. Wright***, 276 A.3d 821, 827 (Pa. Super. 2022) (noting that questions regarding the legality of the sentence questions "are not waivable and may be raised *sua sponte* on direct review by this Court" (citation omitted and formatting altered)).  A challenge to the legality of the sentence "presents a pure question of law.  As such, our scope of review is plenary and our standard of review *de novo*."  ***Id.*** (citations omitted and formatting altered).

_____

[4] The trial court's citations in the second and third full paragraphs, respectively, on page 10 of its opinion should read "***Commonwealth v. Geiger***, 944 A.2d 85, 91 (Pa. Super. 2008)," and "***Commonwealth v. Myers***, 200 A. 143, 264 (Pa. Super. 1938)."  Further, the trial court's citations the fourth paragraph on page 14 of opinion should read "***Commonwealth v. Young***, 35 A.3d 54, 62 (Pa. Super. 2011)," and "***Commonwealth v. Goins***, 867 A.2d 526, 530 (Pa. Super. 2004)."

[5] The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

"If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." *Commonwealth v. Warunek*, 279 A.3d 52, 54 (Pa. Super. 2022) (citation omitted and some formatting altered).

This Court has previously considered whether a defendant can simultaneously serve a term of probation while serving a term of confinement. *Commonwealth v. Allshouse*, 33 A.3d 31 (Pa. Super. 2011), *overruled on other grounds by Commonwealth v. Simmons*, 262 A.3d 512 (Pa. Super. 2021) (*en banc*). The *Allshouse* Court held that there was "no support in the Pennsylvania statutes that the General Assembly intended to permit defendants to serve a term of probation and a term of state incarceration simultaneously. To do [so] would run contrary to the various policy considerations underlying sentencing." *Allshouse*, 33 A.3d at 36 (footnotes omitted); *see also Commonwealth v. Brown*, 145 A.3d 184, 187-88 (Pa. Super. 2016) (applying *Allshouse* and concluding that a defendant may not serve terms of incarceration and probation concurrently); *Commonwealth v. Patel*, 1610 EDA 2023, 2024 WL 3440448, at *5 (Pa. Super. filed Jul. 17, 2024) (unpublished mem.).[6]

---

[6] *See* Pa.R.A.P. 126(b) (providing that we may cite to unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, for their persuasive value).

- 6 -

Further, this Court has stated that

nothing in the Sentencing Code permits a consecutive order of probation to be aggregated with a sentence of total confinement. Rather, 42 Pa.C.S. § 9757 – regarding aggregation of sentences – only applies to "consecutive sentences of total confinement." 42 Pa.C.S. § 9757. An order of probation is, obviously, not a sentence of "total confinement." Therefore, under the Sentencing Code, a sentence of total confinement and a consecutive order of probation may not be aggregated and viewed as one.

**Simmons**, 262 A.3d at 524 (some citations, footnotes, and emphasis omitted).

Here, the trial court sentenced Appellant to concurrent terms of two to four years' incarceration for robbery and conspiracy. **See** Am. Sentencing Order, 9/27/23, at 1. The trial court also imposed terms of ten years' **concurrent probation** for each of those counts. **See id.** Because a defendant cannot simultaneously serve terms of incarceration and probation, we are constrained to conclude that Appellant's sentence is illegal.[7] **See Simmons**, 262 A.3d at 524; **Allshouse**, 33 A.3d at 36.

Accordingly, while we affirm Appellant's convictions, we vacate her judgment of sentence and remand for resentencing. **See Warunek**, 279 A.3d at 54; **see also Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006) (stating that if this Court's "disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure

---

[7] We also note that the trial court failed to impose the mandatory fine of $500 for Appellant's conviction for fleeing or attempting to elude police officer. **See** 75 Pa.C.S. § 3733(a.2)(1).

its sentence plan" (citation omitted)); *Patel*, 2024 WL 3440448, at \*5 (stating that "[a]s our prevailing case law prohibits concurrent terms of imprisonment and probation, we must remand for the lower court to rectify [the defendant's] sentencing scheme and to ensure that an illegal sentence has not been imposed" (some formatting altered)).

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2024

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
CRIMINAL TRIAL DIVISION**

| | | |
|---|---|---|
| **COMMONWEALTH** | : | **NO.: CP-51-CR-001116-2022** |
| **OF PENNSYLVANIA** | : | |
| | : | |
| **v.** | : | |
| | : | **Superior Court No.: 2722 EDA 2023** |
| **MICHELLE BOWERS** | : | |

**OPINION**

**Anhalt, J.**

On July 25, 2022, Appellant was found guilty after a waiver trial of one count of Robbery[1], one count of Conspiracy[2], one count of Theft[3], one count of Receiving Stolen Property[4], one count of Recklessly Endangering Another Person[5], and one count of Fleeing or Attempting to Elude an officer[6].

On June 15, 2023, the court imposed sentences of 2 to 4 years on the robbery and an additional 10 years concurrent probation, and 2 to 4 years on conspiracy and 10 years concurrent probation, 2 years' probation on recklessly endangering another person and 7 years of consecutive probation on the count of eluting an officer[7]. Appellant filed a timely Notice of Appeal to the Superior Court on October 24, 2023 and brings the present appeal.

The Court submits the following Opinion in accordance with the requirements of Pa.R.A.P. 1925(a). For the reasons set forth herein, the judgment of conviction should be affirmed.

---

[1] 18 Pa. C.S. § 3701 §§ A1I
[2] 18 Pa.C.S. § 903(a)
[3] 18 Pa. C.S. § 3921 §§ A
[4] 18 Pa. C.S. § 3925 §§ A
[5] 18 Pa.C.S. § 2705
[6] 18 Pa.C.S. § 3733
[7] All sentences run concurrently for a total of 2 to 4 years SCI plus 10 years' probation.

1

## PROCEDURAL HISTORY

On December 23, 2021 Appellant was arrested and charged with robbery, conspiracy, theft, receiving stolen property, possession of an instrument of crime, simple assault, recklessly endangering another person, fleeing, or attempting to elude an officer, firearms not to be carried without a license and carry firearms in public in Philadelphia.

On September 29, 2022, the case proceeded to a waiver trial before the Honorable Diana L. Anhalt. On October 07, 2022, Appellant was found guilty of robbery, conspiracy, theft, receiving stolen property, recklessly endangering another person and eluting an officer. Appellant was then sentenced to 2 to 4 years of incarceration on robbery, 2 to 4 years of incarceration on conspiracy, 10 years concurrent probation, 2 years' probation on recklessly endangering and 7 years of consecutive probation on eluting an officer. Counsel filed Post Sentence Motions on June 26, 2023 which were denied by the court on September 27, 2023. Appellant now brings this timely appeal.[8]

Appellant raises the following issues on appeal which are written verbatim, as follows:

### 1. SUFFICIENCY OF THE EVIDENCE

The evidence of 18 § 3701 §§ A1I – Robbery-Inflict Serious Bodily Injury (F1), 18 § 903 – Conspiracy – Robbery- Inflict Serious Bodily Injury (F1), 18 § 3921 §§ A – Theft by Unlaw Taking-Movable Property, and 18 § 3925 §§ A – Receiving Stolen Property was not supported by the evidence.

With regards to agreement, the prosecution must prove beyond a reasonable doubt that there was an agreement between co-conspirators. To prove agreement the district attorney or prosecutor does not need to show an explicit or formal understanding (direct evidence) but must show more than a mere association or mere presence. A judge or jury can find conspiracy through a defendant's relation, conduct, or circumstances of the party (circumstantial evidence). Mere association or presence at the scene of the crime is insufficient to establish conspiracy.

### 2. WEIGHT OF THE EVIDENCE

---

[8] This is not a concise statement of matters complained on an appeal. Nonetheless, this Court did the best it could to organize the issues.

2

The verdicts of 18 18 § 3701 §§ A1I – Robbery-Inflict Serious Bodily Injury (F1), 18 § 903 – Conspiracy – Robbery- Inflct Serious Bodily Injury (F1), 18 § 3921 §§ A – Theft by Unlaw Taking-Movable Property, and 18 § 3925 §§ A – Receiving Stolen Property were against the weight of the evidence.

## 3. CO-CONSPIRATOR'S TESTIMONY[9]

A stipulation was entered into evidence regarding the testimony of the alleged co-conspirator, Michael Nixon who provided an inculpable statement to Philadelphia Police Homicide Detectives, which indicated that defendant, Michelle Bowers had no knowledge that it was Michael Nixon's intention to rob the pharmacy using a gun to intimidate the employees. Defendant, Michelle Bowers' testimony indicated that she did not know that Michael Nixon intended to rob the pharmacy using a gun to intimidate the employees. The Pennsylvania Superior Court has ruled that such testimony.

804(a) CRITERIA FOR BEING UNAVAILABLE. A declarant is considered to be unavailable as a witness if the declarant:

(1) is exempted from testifying about the subject matter of declarant's statement because the Court rules that a privilege applies; or

(5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

(B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

Rule 804(b). The Exceptions reads in pertinent part as follows:

(b) *The Exceptions.* The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

(3) *Statement Against Interest.* A statement that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

---

[9] This issue is not appealable and goes to the weight of the evidence. Regardless of the testimony from either party, the Commonwealth proved beyond a reasonable doubt that Michelle Bowers had knowledge of what Michael Nixon was going to do in the pharmacy that evening and by her actions, clearly engaged in a conspiracy with him to commit the robbery of the pharmacy.

The Commonwealth's evidence fails to prove that there was an agreement between defendant Michelle Bowers and Michael Nixon to rob the pharmacy at point of gun. Defendant, Bowers did not go into the pharmacy, there is no proof that she was aware of the back door to the pharmacy or that she was able to see what was occurring in the pharmacy.

The central issue in trial is proof of an agreement. The prosecution will fail without proof of an agreement. The best defense can be denying that an agreement was made. In the instant case, the defendant and the co-conspirator both gave testimony that defendant, Bowers was unaware of the planned gun point robbery.

One key to the agreement is proof of knowledge. The Commonwealth needs to prove that the parties to the agreement knew what the purpose was. That is, each person to the agreement must know that the objective agreement is to commit a crime. Where a person did not know what the purpose was, they may be not guilty. The parties to the agreement must knowingly act to further or enable the conspiracy. If the evidence at trial is that the defendant acted without knowing that it would enable a conspiracy, then they may be not guilty.

## 4. CONSPIRACY & FLIGHT[10]

Defendant Bowers' actions in fleeing the scene and attempting to elude police does not prove a conspiracy. To be guilty of a conspiracy, the prosecution must prove that the person agreed with another to engage in conduct which constituted a crime or attempted to engage in conduct.

## FACTUAL HISTORY:

On December 22, 2021, at approximately 6:00 pm, a Dodge Charger, driven by Appellant, approached the back of Super Drugs Pharmacy (C-2(A) at 11:11). When the car approached the back of the store, its headlights were shut off. The car parked outside the parking lot (C-2(A) at 11:11). Significant time passes before the passenger[11] of the Charger gets out of the car (C-2(A) at 11:11).

The passenger eventually approached the back door of Sugar Drug Pharmacy where he encounters Christina Palengas, the Pharmacist there. Ms. Palengas had just started her end-of-shift routine (N.T. 09/29/22, 14-15). As she exited the back door of the pharmacy to move her car from

---

[10] The Court addresses these issues in the sufficiency section of this opinion. To avoid unnecessary reiteration, and for the reasons set forth in the sufficient sections, this Court will not readdress the issues of conspiracy and flight.
[11] The passenger of the Dodge Charger was co-conspirator, Michael Nixon also referred to as "gunman" and "Mr. Nixon."

4

that lot to the front of the store, the gunman appeared in front of her (N.T. 09/29/22, 14-15). Startled, Ms. Palengas screamed and ran back into the pharmacy through the back door (N.T. 09/29/22, 15). The gunman ran after her, grabbed her and threw her onto the floor, demanding that the pharmacy technicians pack a backpack with narcotics (N.T. 09/29/22, 15-16). Realizing that only she could access the safe where the narcotics were stored, Ms. Palengas informed the gunman, who forcibly tossed her to the safe to fill the bags (N.T. 09/29/22, 17-18). She emptied five or six drawers of pills from the safe, all the while, the gunman periodically opened the back door to look outside (N.T. 09/29/22, 18). At one point, the gunman leaves the pharmacy through the back door for several seconds before returning into the pharmacy (N.T. 09/29/22, 18). Eventually, as soon as she finished filling the entire bag, the gunman fled through the back door (N.T. 09/29/22, 19).[12]

At the same time, Angel Malvonado, a delivery driver for the pharmacy, had returned around 5:30 p.m. and parked his delivery vehicle in the gated parking lot designated for employees (N.T. 10/07/22, 42). He attempted to enter the back door of the pharmacy when the gunman confronted him and ordered him inside (N.T. 10/07/22, 43). Mr. Malvonado remained outside the pharmacy and tried to escape by running outside the employee parking lot to his personal car (N.T. 09/29/22, 45). Appellant, however, repeatedly honked the horn while she waited in the car outside the pharmacy and alerted the co-defendant by pointing to Mr. Malvonado when he was coming out of the backdoor of the pharmacy. (N.T. 09/29/22, 49, 52-53). This is when Mr. Malvonado realized the gunman was not alone. (N.T. 09/29/22, 49, 52-53). Mr. Nixon pursued Mr. Malvonado, striking him with the gun and kicking him (N.T. 09/29/22, 45-47). All while Appellant was in the car witnessing the interaction. (N.T. 09/29/22, 45-47).

---

[12] All of these events can also be seen on the video surveillance from the inside and outside of the pharmacy. These videos were entered into evidence by the Commonwealth. See Commonwealth Exhibits C1-A – Surveillance Footage Inside Pharmacy, C-1B – Video in Hallway of Pharmacy, C-2A-B – Surveillance Footage Outside Pharmacy.

5

After the confrontation with Mr. Malvonado, the gunman returned inside the pharmacy (N.T. 09/29/22, 55). Soon after, the gunman emerged from the back of the pharmacy, crossed the rear parking lot of the pharmacy and entered the passenger side of the Charger, which sped away promptly (N.T. 09/29/22, 55). Prior to entering the vehicle, the gunmen dropped what appears to be his gun on the sidewalk outside the employee parking area, picks it up and runs into the car (C-2(B) at 10:00). The car was still running when the man entered. (N.T. 09/29/22, 56-57). As the Charger departed, Mr. Malvonado noticed police lights approaching down the street and informed the officers about what had just happened. (N.T. 09/29/22, 49-50). This entire interaction was caught on video surveillance and was entered into evidence by the Commonwealth (Commonwealth Exhibits C-2(A) & C-2(B)).

Within seconds of the Charger pulling away at a high speed, Philadelphia Police Officers, who were on the 2900 block of Orkney, were flagged down by Mr. Malvonado (N.T. 09/29/22, 49-50). At this point, the officers had already witnessed an individual, dressed in a bulky coat, bending over, and holding an object, entering the passenger side of the Charger (N.T. 10/07/22, 15). As they attempted to pull over the Charger by activating their lights and sirens, the car immediately sped away at a speed of approximately 30-40 miles per hour (N.T. 10/07/22, 15-16).

The police officers pursued the Charger (N.T. 10/07/22, 17-18). Eventually, Officer Czarnecki and approximately 20 other Philadelphia Police Officers joined the chase (N.T. 10/07/22). As Appellant recklessly drove through the streets of Philadelphia, officers observed the passenger in the vehicle discarding items (N.T. 10/07/22, 21). Officer Czarnecki ultimately found the crashed Dodge Charger on Janney Street with both the driver and passenger still in the vehicle (N.T. 10/07/22, 28-29). The passenger, Michael Nixon, was apprehended by Officer Czarnecki's partner on the passenger side of the vehicle (N.T. 10/07/22, 29). When Officer Czarnecki

6

approached the locked driver's side, the driver, Ms. Michelle Bowers, Appellant, initially refused to unlock the door, but eventually did so. (N.T. 10/07/22, 29). Officer Czarnecki arrested Appellant in the driver's seat of the car and she was taken into custody (N.T. 10/07/22, 29).

Detective Matthew Dydak also responded to the incident and recounted the execution of a search warrant for the Dodge Charger (N.T. 10/07/22, 34). During this search, police recovered six bundles of heroin, numerous prescription bottles (both open and unopened), and loose pills in the center console of the vehicle (N.T. 10/07/22, 35-36).

Appellant provided her version of events during her trial testimony. Ms. Bowers claimed that when she met the male, Michael Nixon, he asked her to take him to North Philadelphia to pick up Percocet (N.T. 10/07/22, 44). En route to North Philly, Mr. Nixon made a stop at a corner store, where Ms. Bowers got out to withdraw money from an ATM (N.T. 10/07/22, 45-46). Upon her return to the car, Mr. Nixon communicated that he was not feeling well and asked Ms. Bowers to take the wheel (N.T. 10/07/22, 46). Ms. Bowers made a stop at one location for Percocet, but when they could not find what Mr. Nixon sought, they proceeded to the back of Orkney Street (N.T. 10/07/22, 47). Ms. Bowers recounted observing Mr. Nixon exiting the car and sitting on the back steps while she stayed in the car and played on her phone (N.T. 10/07/22, 47).

While Mr. Nixon was away from the car, Ms. Bowers witnessed a male, Mr. Malvonado, rising from the ground in front of her car and sprinting toward the car parked in front of hers (N.T. 10/07/22, 47). Ms. Bowers testified that she honked her horn to assist Mr. Malvonado, who seemed injured, but she did not exit the car (N.T. 10/07/22, 48, 58). Within seconds, Ms. Bowers saw Mr. Nixon running towards the car, and she noticed police officers approaching on the street (N.T. 10/07/22, 48). Ms. Bowers sped away (N.T. 10/07/22, 48). She led the officers on a car chase through Philadelphia, which included entering a major highway, I-95, navigating through the city's

7

smaller streets, all the while seeing "numerous police cars" and a helicopter overhead (N.T. 10/07/22, 49-50). Ms. Bowers confirmed that she saw flashing lights and heard sirens throughout the pursuit, and nevertheless she disregarded their commands to stop. (N.T. 10/07/22, 48-50).

Ms. Bowers testified that she never saw a gun in the car, nor did she see Mr. Nixon throw things out the window during the car chase (N.T. 10/07/22, 54). Furthermore, she testified that she did not observe any pill bottles in the car (N.T. 10/07/22, 66). Ms. Bowers asserts that when Mr. Nixon got into the car, she did not see him carrying a big black bag (N.T. 10/07/22, 59)

Ultimately, the court rejected Appellant's version of events, as well as the limited statement provided by the co-defendant by stipulation, and found her guilty as described above.

**DISCUSSION:**

1. **The evidence was sufficient to convict Appellant of all charges.**

The standard under which a challenge to the sufficiency of the evidence is to be analyzed is well-settled:

> In conducting our review, we must determine whether the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, supports the jury's finding that every element of the offense was proven beyond a reasonable doubt. *Commonwealth v. Laird*, 605 Pa. 137, 988 A.2d 618, 624 (Pa. 2010). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the jury, in passing upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence. Id.

*Commonwealth v. Arrington*, 86 A.3d 831, 840 (Pa. 2014), citing *Commonwealth v. Laird*, 988 A.2d 618 (Pa. 2010). In determining whether there was sufficient evidence to support a fact finder's findings, a reviewing court is "obliged to determine whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to satisfy all elements of the offense beyond a reasonable doubt." *Commonwealth v. Brown*, 987 A.2d 699, 705 (Pa. 2009).

8

Moreover, "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (*citing Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009)). "Such specificity is of particular importance in cases where, as here, the Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Gibbs*, 981 A.2d at 281. The 1925 (b) statement provided by counsel is not concise, nor is it specific as to which element or elements are lacking. Nevertheless, this court will proceed to address the merits of Appellant's sufficiency arguments.

### a. Conspiracy

Under the Pennsylvania Criminal Code conspiracy is defined as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>>
>> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a). "To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa. Super. 2011).

By its very nature, the crime of conspiracy is frequently not susceptible of proof except by circumstantial evidence. *Commonwealth v. Kwatkoski*, 406 A.2d 1102 (Pa. 1979). A conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties,

9

and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed. *Commonwealth v. Horvath*, 144 A.2d 489, 492 (Pa. Super. 1958). Nevertheless, the evidence must "rise above mere suspicion or possibility of guilty collusion." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (*quoting Commonwealth v. Swedlow*, 636 A.2d 1173, 1177 (Pa. Super. 1994)).

Once the conspiracy is established, the actions of each co-conspirator may be imputed to the other conspirators. *Commonwealth v. Saunders*, 946 A.2d 776, 781 (Pa. Super. Ct. 2008 ("*Commonwealth v. Geiger*, 2008 WL 499802, *4 (Pa.Super. filed Feb. 26, 2008)"). In this regard, "[t]he law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in furtherance of the common design." *Commonwealth v. Baskerville*, 452 Pa.Super. 82, 681 A.2d 195, 201 (1996).

In addition, evidence of flight can be considered as consciousness of guilt. "It is well settled that evidence of flight following the commission of a crime is admissible as having a tendency to prove the guilt of accused." *Commonwealth v. Myers*, 131 Pa. Super. 258, 200 A. 113 (Pa. Super. Ct. 1938). *See* also *Commonwealth v. Graham*, 248 Pa. Super. 406, 407, 375 A.2d 161, 162 (1977); *Commonwealth v. Liebowitz*, 143 Pa.Super. 75, 83, 17 A.2d 719 (1940). [A] person has reason to know [s]he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may from a basis, in connection with other proof, from which guilt may be inferred. *Commonwealth v. Tha*, 64 A.3d 704, 714 (Pa. Super. 2013) (citation omitted).

Generally speaking, when a crime has been committed and a person thinks he or she may be accused of committing it and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt. A person may flee

10

or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted flight or concealment. Pa.S.S.J.I. (Crim.) 3.14.

In the present case, when viewed in a light most favorable to the Commonwealth, the evidence established, (1) Appellant entered into an agreement to commit or aid in an unlawful act with another person or persons (*i.e.,* drive the co-conspirator to the back of a pharmacy, with the lights out, and wait outside for him in the car, with it running), (2) while waiting for the co-conspirator outside the pharmacy, Appellant gave warning to the gunman that the delivery driver was approaching and (3) that Appellant sped away after the co-conspirator got into the passenger side of the car with a large black bag full of pills (*i.e.,* Appellant attempted to get away from law enforcement by not pulling over as soon as the cops turned on their lights and sirens.) The evidence establishes more than just mere presence on behalf of the Appellant. In fact, the evidence proves that the Appellant and co-conspirator agreed (and intended) to commit the crimes at issue that evening.

The law makes clear that since it is difficult to prove an explicit agreement, an act may be proved inferentially by circumstantial evidence, *i.e.,* the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

Here, video footage from the pharmacy and credible eyewitness testimony corroborated the circumstantial evidence. On the night in question, Appellant, the driver of the Charger, pulled onto Orkney street with the car's headlights off. Appellant parked the get-away car within view of the back door of the pharmacy and the employee parking lot. Appellant remained in the car when the co-defendant entered the back of the pharmacy. Appellant kept the car running. Appellant

11

watched as the co-defendant made his way into the parking lot and ultimately to the back door of the pharmacy. In addition, Appellant gave a warning to Mr. Nixon that the delivery driver was approaching by honking the horn and pointing at the driver repeatedly. When Mr. Nixon entered the passenger side of the vehicle, the car sped away. Appellant proceeded on a car chase throughout the city while Mr. Nixon discarded items from the passenger side of the vehicle. When the car was searched, loose pills and pill bottles were recovered. The overwhelming amount of evidence proves that Ms. Bowers was keenly aware of what Mr. Nixon had just done inside the pharmacy and in fact, aided in the crime.

Thus, the Commonwealth proved beyond a reasonable doubt that Appellant was guilty of the criminal conspiracy. With a conspiracy charge, the evidence similarly was sufficient to find Appellant guilty of robbery, theft and receiving stolen property.

### b. Robbery

Appellant contends that the evidence was insufficient to sustain her conviction for robbery. However, and as explained above, when the Appellant is found guilty of conspiracy, the actions of each co-conspirator may be imputed to the other conspirators. *Saunders*, 946 A.2d at 776 - 781. Both the evidence and eyewitness testimony provided by Mr. Malvonado, Ms. Palengas and Philadelphia police officers established beyond a reasonable doubt that Appellant conspired with Michael Nixon while committing a theft, and so her claim fails.

An individual is guilty of robbery if, during the course of committing a theft, (i) he inflicts serious bodily injury upon another or (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury. 18 Pa.C.S.A. § 3701(a)(1)(i)(ii). The evidence is sufficient to convict a defendant of robbery under section (ii) "if the evidence demonstrates aggressive actions that threatened the victim's safety." *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super.

12

2011), appeal denied, 32 A.3d 1275 (Pa. 2011). The court must focus "on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury." *Id.* (citations omitted).

Additionally, "in order to sustain a conviction under § 3701(a)(1)(ii), the Commonwealth need not prove verbal utterance, but may show aggressive actions that threaten serious bodily injury." *Commonwealth v. Davis*, 313 Pa.Super. 355, 459 A.2d 1267, 1272 (1983). In *Davis*, the defendant entered a pipe shop through the store window, told the clerk to get back, and removed money from the cash register. *Id.* As the Superior Court found that Appellant's mode of entry and his warning to the clerk was aggressive and implied a threat to the victim's safety, the Superior Court upheld the defendant's robbery conviction under § 3701(a)(1)(ii). *Id.* (citing *Commonwealth v. Bragg*, 133 A.3d 328, 329 (Pa. Super. Ct. 2016).

Similarly, in the instant case, as in *Davis*, Mr. Nixon's aggressive actions placed the employees of Super Drug Pharmacy in fear of serious bodily injury. Mr. Nixon entered the back door of the pharmacy, with a gun. The entrance was intended for pharmacy employees only. When he entered the back door, he met Ms. Palengas who screamed and ran back into the pharmacy through the back door (N.T. 09/29/22, 15). Mr. Nixon ran after her, grabbed her and threw her onto the floor (N.T. 09/29/22, 15-16). During his time inside the pharmacy, he was demanding pharmacy technicians and Ms. Palengas to fill a backpack with narcotics (N.T. 09/29/22, 15-16). His gun was drawn during the entire interaction and pointed repeatedly at the victim (C1-A – Surveillance Footage Inside Pharmacy). In *Davis*, as in this case, the co-conspirator's mode of entry was aggressive and implied threat to the victim's safety and he pointed a gun at the victim while stealing drugs from the store.

13

As such, the threat of serious bodily injury when a gun is pointed at the victim, was evident here and was corroborated by all the witnesses. Accordingly, there is sufficient evidence to convict an individual of robbery. Therefore, this Court did not err in finding the Appellant guilty of robbery because she can reasonably be imputed for the actions of Mr. Nixon.

### c. Theft[14]

Appellant contends that the evidence was insufficient to sustain her conviction of theft. However, and again, as explained above, when the Appellant is found guilty of conspiracy, each conspirator is criminally responsible for the actions of his co-conspirator. *Baskerville*, 681 A.2d at 195 – 201.

A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof. Moveable property is defined as "[p]roperty the location of which can be changed" 18 Pa.C.S.A. § 3901. "Deprivation" occurs if a person: (1) "withhold[s] property of another permanently;" or (2) "dispose[s] of the property so as to make it unlikely that the owner will recover it 18 Pa.C.S.A. § 3901.

To prove this offense, the Commonwealth must establish: (1) the unlawful taking or unlawful control over the moveable property; (2) that belongs to another; (3) with the intent to permanently deprive the lawful owner. *Commonwealth v. Young,* 35 A.3d (Pa. Super. 2022), citing *Commonwealth v. Goins*, 867 A.2d (Pa. Super. 2004).

In the present case, when viewed in a light most favorable to the Commonwealth, the evidence established (1) the unlawful taking or unlawful control over the moveable property (2) that belongs to another (i.e., Mr. Nixon went in through the back door of the Super Drug Pharmacy and stole six drawers of narcotics from the pharmacy at gunpoint). And (3) with the intent to

---

[14] The theft conviction merges with the Robbery for purposes of sentencing. Appellant was not sentenced for the theft.

14

permanently deprive the lawful owner (i.e., Mr. Nixon ran out the back door of the pharmacy with large bags of narcotics and Appellant sped away). Further, while on a highspeed chase throughout the city, Mr. Nixon was throwing the narcotics out of the passenger side window. That and the credible testimony provided by Mr. Malvonado, Ms. Palengas and Philadelphia police officers established beyond a reasonable doubt that Appellant committed theft, and so her claim fails.

### d. Receiving Stolen Property[15]

Appellant contends that the Commonwealth has failed to prove beyond a reasonable doubt that she knew or had reason to know that property had been stolen. However, and again, as explained above, when the Appellant is found guilty of conspiracy, they can also be imputed of the co-conspirators offenses. *Saunders*, 946 A.2d at 776 - 778.

A person is guilty of receiving stolen property if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

In a prosecution for receiving stolen property, the Commonwealth must prove beyond a reasonable doubt the three elements of the crime: (1) that certain goods were stolen; (2) that the defendant received some or all of the goods; and (3) that he received them knowing or having reason to know that the goods were stolen. *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971).

"The element of appellant's guilty knowledge may be established by direct evidence of knowledge or by circumstantial evidence from which it can be inferred that appellant had reasonable cause to know that the property was stolen. If from the circumstantial evidence, it can

---

[15] The receiving stolen property conviction merged with the Robbery for sentencing. Appellant was not sentenced on the receiving stolen property charge.

15

be inferred that the appellant had reasonable cause to know, a final inference can reasonably be made that he in fact knew that the property was stolen." *Commonwealth v. Henderson*, 451 Pa. 452, 455, 304 A.2d 154, 156 (1973).

In the present case, when viewed in a light most favorable to the Commonwealth, the evidence established (1) the goods were stolen (*i.e.,* Mr. Nixon went into the pharmacy where Ms. Palengas filled up bags of narcotics for Mr. Nixon). Additionally, when he ran through the back door of the pharmacy, Mr. Malvonado witnessed Mr. Nixon carrying several large bags. (2) that the defendant received some or all of the goods (*i.e.,* Mr. Nixon entered the passenger side of the vehicle with the large bags in hand). Despite her testimony, there is no way Appellant did not notice the bags when he entered the passenger side of the vehicle. Further, during the search of the car, Detective Dydak discovered six bundles of heroin, numerous prescription bottles (both open and unopened), and loose pills in the center console of the vehicle (N.T. 10/07/22, 35-36). And (3) that the defendant received them knowing or having reason to know that the goods were stolen (*i.e.,* Appellant watched Mr. Nixon exit the back door of the pharmacy with the bags in hand, get in her car, and promptly sped away).

Thus, her claim fails.

## 2. The verdict was not against the weight of the evidence.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). The Supreme Court of Pennsylvania in *Champney* explained that an appellate court cannot substitute its judgment for that of the finder of fact. *Id.* Therefore, the court may only reverse the lower court if the verdict is so contrary to the evidence as to "shock one's sense of justice." *Id.* (*citing Commonwealth v. Small*, 741 A.2d 666, 672–73

16

(Pa. 1999)). The Supreme Court has set forth the following standard of review for Appellant's claim that the verdict is against the weight of evidence and that he should be entitled to a new trial:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotations omitted); *see also Kaplan v. O'Kane*, 835 A.2d 735, 737 (Pa. Super. 2003) (holding "[t]he power to grant a new trial lies inherently with the trial court, and [the] appellate court will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case.").

This Court properly denied Appellant's post-trial motion for a new trial because the verdict on all charges was not against the weight of evidence. Additionally, this Court's decision to credit the Commonwealth's eyewitness testimony, which is corroborated by video evidence does not "shock the conscious" and this Court's denial of Appellant's weight of the evidence claim does not, therefore, constitute an abuse of discretion. The court is free to discredit the self-serving and uncorroborated testimony of the Appellant and the statement given by the co-defendant. *Commonwealth v. Cousar*, 928 A.2d 1025, 1035-36 (Pa. 2007) (no abuse of discretion in denying weight of the evidence claim despite discrepancies in the testimony.) No relief is due.

**CONCLUSION:**

For the foregoing reasons, the judgment of this Court should be affirmed.

17

**BY THE COURT:**

_____
DIANA L. ANHALT, J.

DATE: December 5, 2023

18

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the below person(s) in the manner indicated below, which services satisfies the requirements of Pa.R.Crim. 114:

| | |
|---|---|
| Lawrence Goode, Esquire<br>Philadelphia Attorney's Office<br>Three South Penn Square<br>Philadelphia, PA 19107 | First Class Mail |
| Michael I. McDermott, Esquire<br>121 South Broad Street, Floor 18<br>Philadelphia, PA 19107-1808 | First Class Mail |
| Michelle Bowers<br>Inmate #PE6754<br>SCI Muncy<br>PO Box 180<br>Muncy, PA 17756 | Certified Mail |

**Dated: December 5, 2023**

Francesca M. Geonnotti
Judicial Law Clerk for the Honorable Diana L. Anhalt

19